JUDGE PETERS
delivered the opinion op the court.
In this action for a libel appellant alleges in his petition that appellees published of and concerning him a defamatory libel, containing, among other things, the following false, scandalous, malicious, defamatory, and libelous matter, to wit: “ He (the plaintiff meaning) has been guilty of using improper and unchaste language to sister Permelia Florence, and we recommend that the fellowship of the church be withdrawn from him,” the plaintiff; whereby he was greatly injured in his good name, etc., and was brought into disgrace, infamy, and contempt among his neighbors and other good and worthy citizens of the commonwealth, etc.
■ In an amended petition he alleges that appellees, on Saturday, the 1st day of October, 1870, did compose and publish a writing, signed by them in the presence and hearing of a large number of his fellow-citizens of Harrison County, of and concerning him (the plaintiff), “containing, among other things, the false, scandalous, malicious, defamatory, and libelous matter and words following”:
*299 “October 1, 1870.
“ We the undersigned, two of the elders of the Church of Christ at Indian Creek, having heard an evil report concerning brother W. J. Lucas, to the effect that he had used unchaste language to Permelia Florence, and had been guilty of improper conduct toward her, believing it to be our duty to satisfy ourselves as to the truth or falsity of said report, went and visited the parties in reference to it. The decision rendered at this time was concurred in by the other elder at the time reported to him, but was wholly unsatisfactory to both of the parties Concerned, and also to many members of the church. We therefore deemed it our duty to call to our aid the other elder and our pastor, and give the whole matter a more thorough examination, if possible.
“ We visited all those whom we could expect to give us any evidence or new facts concerning the matter. Having done this, we find upon this visit or examination that the circulated report is more unfavorable to brother W. J. Lucas than appeared to us at first; so much so that we are compelled to believe that at least a portion if not all of the statements as charged in the evil report is true; and, inasmuch as he denies them all, we are compelled to pronounce him a disorderly member of the church, and in accordance with the teachings of the New Testament scriptures to withdraw the fellowship of the church from him. For which instructions see third chapter of 2 Thessalonians, sixth verse.”
[Signed by appellees, with the affix of “ Elders.”]
And he again avers that appellees did falsely, wickedly, and with malice compose and publish said paper, whereby he was and is greatly injured, etc.
Appellees Case, Waits, and Vanhook filed a joint answer to the original petition, in which they deny that they at the time of the alleged grievances complained of by appellant *300 entertained any malice against him, and deny that they were actuated by any such motive in doing what they did touching the matters complained of, as he charges. They say that Case was then and still is the pastor of the Church of Christ at Indian Creek, and that Waits and Vanhook then were and are still elders of said church, duly elected and ordained; and that the said Wm. J. Lucas was a member of said church, and that the charges referred to and attempted to be set out in his petition were charges and accusations made to them by members of said church; and in pursuance of their duty as pastor and elders of said church; and at the request of the plaintiff himself, they did investigate said charges fairly, fully, and in good faith, and in discharge of their duty as officers of said church, and made the report which they inserted in their answer, and is the same as that made a part of the amended petition and copied as herein.
At the conclusion of the answer they say, “Which is the only publication ever made by them of and concerning the plaintiff, which was made in manner and form as aforesaid, in discharge of their duties as officers as aforesaid, and without any ill-will or malice toward plaintiff.” . . . And they plead that their action in the premises was official, and as such bars the action.
Wilson, although he filed a separate answer, alleges that he was and is likewise an elder in said church, and repeats the same matters of defense relied upon in the answer of his co-defendants.
In answer to the amended petition, after stating their official positions in the church, they say that charges had been made to them by other members of the church against appellant, and it was their official duty to investigate them, and that they did, in their official capacity, enter upon the investigation thereof at the request of divers members of said church and of plaintiff himself; that they undertook the investigation *301 with no other motive than to discharge their duty, which they did fairly, in good faith, and without any malice whatever toward plaintiff, and on the 1st of October, 1870, made the report to the church before referred to, which is the only writing composed by them in reference to plaintiff, and the reading the same to said church was the only publication they ever made of it; that the same was received and adopted by the church without a dissenting voice; that they had reasonable grounds to believe, and did then and do now believe, that the statements therein contained are true; and they plead the facts as therein stated in bar of the action.
Upon the issues thus made the parties went to trial; and a verdict and judgment having been rendered in favor of appellees, and appellant’s motion for a new trial having been overruled, that judgment is now complained- of by him.
From the evidence in this case it appears that certain persons had voluntarily associated themselves into a society of Christians, and during the year 1870, and previous and subsequent thereto, at stated times assembled at a certain house provided by them to worship, in the county of Harrison; that they called themselves and were known as the Church of Christ at Indian Creek; the church is Congregational, or the exclusive tribunal to deal with defaulting members; and taking the Bible as the only standard of religious truth, and having adopted the New Testament scriptures as the only law for the government of the church and as the rule of action for each individual member, the members repudiate every other formula, rule, or creed. It also appears that it was the custom of the church to elect or set apart certain members — three or four perhaps — as officers, called elders, for examining into alleged violations of the law of the church, and to investigate all charges or complaints of immoral and irreligious conduct of any of its members, to hear the evidence against and for the accused, and to report the same with their decision, or *302 perhaps in some cases to report merely their conclusion, to the church for its action, whose determination is final, as it recognizes no ecclesiastical court or tribunal with authority to revise and reverse its final determination. But it may be allowable ex gratia, in some cases where a party or parties may deem that a fair and impartial trial can not be had by the elders of the particular congregation, to select a tribunal from another church or churches with which it fraternizes to hear the case and report to the church.
Every person entering into the church, impliedly at least, if not expressly, covenants to conform to the rules of the church, to submit to its authority and discipline. Appellant when he became a member thereof placed • himself in this condition. Three of the appellees were elders and one was the pastor of the church, having authority to deal with appellant as with other members for immoral and unchristian conduct, and to recommend an acquittal, or, if in their judgment the evidence required that the party should be punished, to advise censure or exclusion, either as they might deem proper; and in pronouncing the result of their deliberations or reporting the same in writing to the church they will be protected by the law, if they acted in good faith and within the scope of their authority.
In 1 Hilliard on Torts (p. 355) it is said, “The privilege connected with proceedings in courts of justice has also been extended to other quasi judicial proceedings, more especially if their jursidiction and action be of a confidential nature. Thus as between members of a Quaker meeting. So words spoken or written in the regular course of church discipline, or before a tribunal of a religious society, to or of members of the church or society, are as among the members themselves privileged communications, and are not actionable without express malice.”
In Hart v. Reed (1 B. Mon. 166) this court held, “No *303 words written or spoken will be actionable unless they had been published with malice express or implied. And though the law will prima facie imply malice from the falsehood of a slanderous imputation, yet the manner and occasion of the publication may rebut such an implication, and impose on the plaintiff the burthen of proving express malice.”
The law, for example, will never presume malice from a confidential communication, prudently made in good faith, either through benevolence to the person concerning whom it is made, or in the discharge of a legal, social, or moral obligation.
There is no evidence of express malice on the part of appellees toward appellant,' and from what has heretofore been stated it must be evident that appellees acted within the scope of their authority and in the discharge of their duty, and, as the evidence shows, at his own request, and the circumstances under which the writing complained of was made rebut all presumption of malice; and appellees never made any other publication of it than to present it to the church.
Without encumbering this opinion with an analysis of the various instructions refused and given, we deem it sufficient to say that the law as expounded by the court below conforms to the views herein expressed, and the instructions asked by appellant, and which were overruled, were in conflict with the law of the case, and were properly refused.
Whether in what the church did it acted right or wrong, this court can not approach its precincts to inquire, and is powerless to redress any alleged .wrong inflicted on appellant thereby. By becoming a member- of the church he subjected himself to its ecclesiastical power, and neither this nor any other earthly tribunal can supervise or control that jurisdiction. As was said by a distinguished judge, “ His only remedy now is in his own bosom, where a consciousness of his own moral rectitude, and the consolation of that religious faith *304 and the practice of those Christian virtues which he professes, and which under all temporal trials never fail to sustain a faithful Christian and to illumine the pathway of his earthly pilgrimage.”
Perceiving therefore no errors in the proceedings prejudicial to appellant, the judgment must be affirmed.