**R. Ray SINGLETON, Appellant,**

v.

**CHRIST THE SERVANT EVANGELICAL LUTHERAN CHURCH, Respondent,**

**Saint Paul Area Synod of the Evangelical Lutheran Church in America, Respondent.**

No. C9–95–1278.

Court of Appeals of Minnesota.

Jan. 9, 1996.

Review Denied March 19, 1996.

Carole Lofness Baab, Teresa M. Croke, Johnson & Condon, P.A., for Saint Paul Area Synod of the Evangelical Lutheran Church in America.

Considered and decided by SCHUMACHER, P.J., and DAVIES and WILLIS, JJ.

## OPINION

WILLIS, Judge.

Pastor R. Ray Singleton challenges summary judgment in favor of Church and Synod, arguing that the Establishment Clause of the United States Constitution does not bar his claims of breach of contract, promissory estoppel, wrongful discharge, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and tortious interference with contract. Singleton also argues that the district court erred in granting summary judgment on his claims of defamation. We affirm.

## FACTS

Christ the Servant Evangelical Lutheran Church (Church) called Ray Singleton to be its pastor. The letter of call described certain elements of the relationship between the Church and Singleton, including the terms of a compensation package, which was subject to annual review. Financial problems and conflicts between Church members and their previous pastor regarding theological and administrative matters existed at the Church before Singleton's arrival and continued throughout his tenure as pastor. Several families left the Church because of differences with Singleton.

Conflicts within the Church heightened in late 1993. In October 1993, the Church council asked Singleton to leave a council meeting and to respond to a list of concerns. The Church formed a task force to consider remedies for the Church's financial difficulties. At the task force meetings, Church members identified general and specific aspects of Singleton's job performance as reasons certain members had left the Church and others had quit contributing financially to the Church.

Scott W. Lofthus, Sjostrom and Lofthus, Wayzata, for appellant.

David P. Pearson, Kristin Peterson LeBre, Winthrop & Weinstine, P.A., St. Paul, for Christ the Servant Evangelical Lutheran Church.

Singleton communicated to the St. Paul Area Synod of the Evangelical Lutheran Church (Synod) that he wanted to pursue another call and in late December 1993 he interviewed with five other synods. The Synod communicated frequently with Singleton and with Church members throughout this period regarding Singleton's employment and problems at the Church.

On December 21, 1993, the Church council recommended a budget for 1994 that reduced Singleton's annual salary by $16,000. The Church council president drafted a report that included a request for Singleton's resignation. Singleton claims that he was physically and emotionally unable to continue his duties as pastor after receiving the council president's report on January 10, 1994 and that he was unable emotionally to formulate a response to the demand for his resignation. Approximately two weeks later, the congregation adopted a budget for 1994 that reduced the amount available for pastoral services to $3,368.

Singleton sued the Church, asserting claims of breach of contract, wrongful discharge, promissory estoppel, breach of the implied covenant of good faith and fair dealing, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. In addition, Singleton brought claims against the Synod for tortious interference with contract, breach of the implied covenant of good faith and fair dealing, and defamation. The district court entered summary judgment in favor of the Church and the Synod on all claims. Singleton appeals.[1]

## ISSUES

1. Did the district court err in determining that the Establishment Clause warranted summary judgment on Singleton's claims of breach of contract, wrongful discharge, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract?

---

**1.** Singleton does not challenge the district court's grant of summary judgment on his negligent

2. Did the district court err in granting summary judgment in favor of the Church and Synod on Singleton's defamation claims?

## ANALYSIS

On appeal from summary judgment, this court asks whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984).

### I.

The Church and the Synod allege that the First Amendment to the United States Constitution prevents civil courts from reviewing Singleton's claims. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion * * *." U.S. Const. amend. I. The First Amendment applies to the states through the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). Under the Establishment Clause, an exercise of governmental authority is valid if it (1) has a secular purpose, (2) neither inhibits nor advances religion as its primary effect, and (3) does not create excessive entanglement between church and state. *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

Whether government action causes excessive entanglement depends on the nature of the intrusion into religious administration, the character and purpose of the involved institutions, and the resulting relationship between the religious authority and government. *Lemon,* 403 U.S. at 615, 91 S.Ct. at 2112; *Black v. Snyder,* 471 N.W.2d 715, 720 (Minn.App.1991), *review denied* (Minn. Aug. 29, 1991). If a claim involves core issues of ecclesiastical concern, the potential for excessive governmental entanglement precludes judicial review. *Serbian E.*

---

infliction of emotional distress claim against the Church.

*Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 721–23, 96 S.Ct. 2372, 2386–87, 49 L.Ed.2d 151 (1976) (holding that the First Amendment barred judicial consideration of bishop's wrongful discharge claim). If the court can resolve the dispute by looking only to neutral principles of law, however, judicial review is permissible. *Jones v. Wolf,* 443 U.S. 595, 602–05, 99 S.Ct. 3020, 3025–26, 61 L.Ed.2d 775 (1979) (applying neutral principles of law analysis to church property dispute); *Piletich v. Deretich,* 328 N.W.2d 696, 701 (Minn.1982) (adopting neutral principles of law analysis for "resolution of church property and membership disputes").

### A. Claims of Breach of Contract, Wrongful Discharge, and Promissory Estoppel Against the Church

■ Singleton claims that the Church breached its contract with him and wrongfully discharged him by violating provisions of the Church's constitution and the terms of his call. He asserts specifically that, by approving the 1994 budget with a large salary decrease, the Church breached its contract with him and constructively discharged him without following its own procedures. He argues that the Church did not properly terminate his call because it did not articulate any of the six reasons for termination described in the Church's constitution. He also claims that the Church breached its contract by removing him from the Church finance committee, by holding Church council and task force meetings when he was absent, by failing to publish the 1994 budget three weeks prior to the congregational vote, and by failing to notify him properly of task force meetings. Singleton asserts that the Church's constitution and his call letter were a promise of continuing employment that he reasonably relied on to his detriment, thus raising his claim for promissory estoppel.

■ Courts generally refrain from considering claims that require "a searching and therefore impermissible inquiry" into church governance. *Milivojevich,* 426 U.S. at 723–26, 96 S.Ct. at 2387–88. In *Black,* this court dismissed an associate pastor's claims of breach of contract, retaliation, and violation of the whistleblower statute, reasoning that the claims

> relate specifically to factors of [Black's] appointment as associate pastor and discharge. These claims are fundamentally connected to issues of church doctrine and governance and would require court review of the church's motives for discharging Black.

471 N.W.2d at 720.

As in *Black,* Singleton's claims of breach of contract, wrongful discharge, and promissory estoppel relate to his appointment and discharge as a pastor and are fundamentally connected to issues of church governance. Adjudication of these claims also would necessitate inquiry into the Church's motives for proposing to decrease Singleton's salary and for taking the other actions asserted by Singleton as breaches of contract. These claims, therefore, involve strictly ecclesiastical concerns.

■ Singleton argues that his claims could be decided by applying neutral principles of law. The Minnesota Supreme Court has adopted the neutral principles doctrine, however, only to resolve "church property and membership disputes." *Piletich,* 328 N.W.2d at 701. In doing so, the court relied primarily on *Jones v. Wolf,* in which the Supreme Court held that a "State is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute." 443 U.S. at 604, 99 S.Ct. at 3026. The present case does not involve a property dispute or a membership dispute. As a result, neutral principles of law analysis is inappropriate.

■ Even if Minnesota law permitted a neutral principles of law analysis of a pastor's employment-related claims, scriptural and other religious references in the Church's constitution and the call letter complicate secular analysis of the procedures described in those documents. Chapter 15 of the constitution, for example, addresses discipline of Church members and mandates that "prior to disciplinary action, reconciliation will be attempted following Matthew 18:15–17 * * *." The Church constitution also states that the Church-pastor relationship can be

terminated if the pastor is disqualified on "grounds of doctrine, morality, or continued neglect of duty." Singleton's call letter discusses his spiritual obligations to the Church, including to "preach and teach the Word of God; to conduct public worship; to administer the sacraments; to provide pastoral care and leadership * * *." Judicial review of Singleton's claims, thus, would require an evaluation of scripture, doctrine, and moral principles. This is precisely the type of searching inquiry that intrudes into church doctrine and church administrative matters and engenders a prohibited relationship between the Church and the judiciary. *See Lemon,* 403 U.S. at 614–15, 91 S.Ct. at 2112; *Black,* 471 N.W.2d at 720.

Singleton cites *Minker v. Baltimore Annual Conf.,* 894 F.2d 1354, 1359–61 (D.C.Cir. 1990), as the legal basis for applying neutral principles of law to his breach of contract claim. In that case, the court reversed the district court's dismissal of a pastor's oral contract claim, holding that

> [a]ppellant is entitled to prove up his claim of breach of oral contract to the extent that he can divine a course clear of the Church's ecclesiastical domain.

*Minker,* 894 F.2d at 1361.

Singleton's reliance on *Minker* is misplaced. The procedural posture of *Minker* and the present case differ. *Minker* involved a motion to dismiss rather than a summary judgment motion. *See id.* at 1356. The court in *Minker* recognized that a plaintiff, despite successfully opposing a motion to dismiss, might find it difficult to avoid summary judgment:

> It could turn out that in attempting to prove his case, appellant will be forced to inquire into matters of ecclesiastical policy even as to his contract claim. Of course, in that situation, a court may grant summary judgment on the ground that appellant has not proved his case and pursuing the matter further would create an excessive entanglement with religion.

*Id.* at 1360. The *Minker* court's speculation regarding the plaintiff's ability to prove his case using neutral principles of law applies here. Singleton cannot prove his claims without asking the court to inquire into mat-

ters of ecclesiastical policy in the Church's constitution and in his letter of call.

Additionally, other federal appellate courts have reached a contrary conclusion when faced with facts similar to those in *Minker.* In *Lewis v. Seventh Day Adventists Lake Region Conf.,* 978 F.2d 940 (6th Cir.1992), the court of appeals affirmed dismissal of a minister's breach of contract, promissory estoppel, and related claims on Establishment Clause grounds. The court held that, even when the claims are based on misapplication of church procedures and laws, "civil courts may not intervene." *Id.* at 942–43. Similarly, the First Circuit affirmed dismissal of a wrongful discharge claim, concluding that

> [b]y its very nature, the inquiry * * * into the circumstances of [appellant's] discharge plunges an inquisitor into a maelstrom of Church policy, administration, and governance.

*Natal v. Christian & Missionary Alliance,* 878 F.2d 1575, 1578 (1st Cir.1989). Finally, the Sixth Circuit concluded that the neutral principles doctrine

> has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be. The claim here relates to appellant's status and employment as a minister of the church. It therefore concerns internal church discipline, faith, and organization, all of which are governed by ecclesiastical rule, custom, and law.

*Hutchison v. Thomas,* 789 F.2d 392, 396 (6th Cir.) (citing *Kaufmann v. Sheehan,* 707 F.2d 355, 358 (8th Cir.1983)), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986).

At oral argument, Singleton asserted that *Blauert v. Schupmann,* 241 Minn. 428, 63 N.W.2d 578 (1954), permits this court to apply a neutral principles of law analysis. While the court in *Blauert* addressed the district court's determination that the congregation had legally discharged its pastor, the case dealt primarily with church property and membership disputes. 241 Minn. at 434–38, 63 N.W.2d at 583–85. *Blauert* also preceded the Supreme Court's decision in *Milivojevich,* which held that the First Amendment barred a bishop's wrongful discharge

claim. 426 U.S. at 721–23, 96 S.Ct. at 2386–87. Further, *Blauert* preceded *Piletich*, in which the Minnesota Supreme Court limited its acceptance of the neutral principles of law doctrine to cases involving church property or membership disputes. *Piletich*, 328 N.W.2d at 701. We do not believe *Blauert* allows us to review Singleton's claims.

The district court properly granted summary judgment in favor of the Church on Singleton's claims of breach of contract, wrongful discharge, and promissory estoppel.

### B. Claims of Breach of Implied Covenant of Good Faith and Fair Dealing Against the Church and the Synod

 Singleton claims that the Church and the Synod breached the covenant of good faith and fair dealing established by his employment relationship with the Church. Minnesota law, however, does not recognize implied covenants of good faith and fair dealing in employment contracts. *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn.1986); *Spanier v. TCF Bank Sav.*, 495 N.W.2d 18, 21 (Minn. App.1993), *review denied* (Minn. Mar. 22, 1993). In the absence of a contract regarding grounds for discharge, employees serve at the will of their employers. *Spanier*, 495 N.W.2d at 21.

In refusing to acknowledge the existence of implied covenants of good faith and fair dealing in Minnesota employment law, the supreme court recognized the difficulties of an inquiry into the reasons for terminating an employee:

> [T]o imply into each employment contract a duty to terminate in good faith would seem to subject each discharge to judicial incursions into the amorphous concept of bad faith. We are not persuaded that protection of employees requires such an intrusion on the employment relationship or such an imposition on the courts.

*Hunt*, 384 N.W.2d at 858 (quoting *Parnar v. Americana Hotels*, 65 Haw. 370, 652 P.2d 625, 629 (1982)). Because an action for breach of the implied covenant of good faith and fair dealing has been found so invasive as to preclude judicial review of a secular employer's actions, we conclude that judicial inquiry into Singleton's implied covenant claims would excessively entangle the court in the internal affairs of the Church and the Synod.

As a matter of law, the district court properly rejected Singleton's claims of breach of the implied covenant of good faith and fair dealing against the Church and the Synod.

### C. Claim of Intentional Infliction of Emotional Distress Against the Church

 Singleton claims that the Church's conduct and statements by Church members caused him severe emotional distress. Specifically, Singleton points to several statements regarding an intention to remove him from his position as pastor, several statements about his job performance, his removal from several Church committees, submission of written "concerns" about his job performance, and the holding of Church meetings without informing him or members of his family.

 In a claim for intentional infliction of emotional distress, a plaintiff must establish that (1) the conduct was extreme and outrageous, (2) the conduct was intentional or reckless, (3) it caused emotional distress, and (4) the distress was severe. *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 438–39 (Minn.1983). To satisfy the second prong of the test, the actor must intend to cause severe emotional distress or know that it is at least highly probable that emotional distress will result. *Dornfeld v. Oberg*, 503 N.W.2d 115, 119 (Minn.1993). To determine whether the Church intended to cause Singleton emotional distress, a court would need to review the motivations for the Church's actions. The First Amendment prohibits judicial inquiry into motivations for a Church's pastoral employment decisions. *See Black*, 471 N.W.2d at 720 (dismissing a claim that was "fundamentally connected to issues of church doctrine and governance and would require court review of the church's motives for discharging [pastor]").

Singleton's claim for intentional infliction of emotional distress also fails because the Church's actions were not extreme and outrageous. Conduct is extreme and outrageous if it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard*, 330 N.W.2d at 439 (citations omitted). Intentional infliction of emotional distress claims are "sharply limited to cases involving particularly egregious facts." *Id.* None of the Church's actions "passes the boundaries of decency" or is "utterly intolerable to the civilized community." We agree with the district court's conclusion that Singleton "has not met the high standard of proof necessary in Minnesota" to present to the jury his intentional infliction of emotional distress claim.

The district court correctly applied the law in granting summary judgment in favor of the Church on Singleton's claim of intentional infliction of emotional distress.

### D. Claim of Tortious Interference with Contract Against the Synod

Singleton claims that the Synod tortiously interfered with his contract with the Church by communicating certain information to members of the Church council and by failing to discipline the Church for violation of the Synod's constitution. An interference with contract claim requires (1) a contract, (2) knowledge of the contract by the alleged wrongdoer, (3) intentional procurement of a breach of the contract, (4) no justification for the interference, and (5) damages. *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn.1994). Interference with a contract is justified if the conduct is reasonable in light of all the circumstances of the case. *Id.; Potthoff v. Jefferson Lines*, 363 N.W.2d 771, 776 (Minn.App.1985).

To analyze the justification element of this claim, the court would have to consider whether the bishop and his assistants acted reasonably. This analysis would require a review of the duties of the bishop and his assistants, matters of church governance within the Synod, the relationship between the Church and the Synod, the Synod's obligation to provide pastoral care, the Synod's

obligation to discipline its member churches for violations of the Synod's constitution, and the bishop's authority to settle disputes within the Synod's member churches. These matters are ecclesiastical concerns not reviewable under the First Amendment. *See Milivojevich*, 426 U.S. at 721–23, 96 S.Ct. at 2386–87 (dismissing a bishop's wrongful discharge claim because it involved ecclesiastical issues that were barred from review by the First Amendment); *Black*, 471 N.W.2d at 720 (dismissing a discharge-related claim due to the "prohibition against litigating matters at the core of a church's religious practice * * * "). We conclude, therefore, that the district court properly granted the Synod's summary judgment motion on Singleton's claim of tortious interference with contract.

### II.

### A. Claim of Defamation Against the Church

The district court granted summary judgment to the Church on Singleton's claim of defamation, holding that the constitutional prohibition against excessive entanglement precluded review. The court also stated that the Church could not be held liable because the allegedly defamatory statements were made by members, rather than employees, of the Church. Because we hold that the statements were conditionally privileged and that Singleton failed to show malice, we do not reach the constitutional or agency issues on which the trial court based its decision.

Singleton alleges that members of the Church defamed him by making statements that harmed his reputation and his ability to obtain another call. Singleton identifies 10 statements that he claims were defamatory:

(1) An unidentified person at a task force meeting stated that Singleton did not attend a wedding rehearsal;

(2) an unidentified person at a task force meeting stated that Singleton made a false statement regarding a Church member's attendance of a retirement party;

(3) an unidentified person at a task force meeting stated that Singleton insisted that his salary should be paid before the Church's mortgage;

(4) a Church member stated at a task force meeting that Singleton failed to visit in the hospital a woman with cancer;

(5) a Church council member stated at a task force meeting that Singleton did not respond to her telephone call regarding an infant's death;

(6) a Church member stated at a task force meeting that Singleton breached his duty of confidentiality by telling others of the member's abusive father and by stating that the member had a problem with authority;

(7) an unidentified person stated at the task force meeting that Singleton charged $500 for conducting a wedding;

(8) a Church member stated at a task force meeting that Singleton received eleven weeks of vacation;

(9) a Church youth committee member stated at a Church council meeting that Singleton had jeopardized the Church's insurance policy by taking the Church bus to camp; and

(10) a Church youth committee member stated at a Church council meeting that when Singleton was out of town he returned for funerals only of friends.

 A statement is defamatory if (1) it is communicated to someone other than the plaintiff, (2) it is false, and (3) it tends to harm the plaintiff's reputation and tends to lower the plaintiff in the estimation of the community. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn.1980) (citing Restatement (Second) of Torts §§ 558–559 (1977); W. Prosser, *Handbook of the Law of Torts* § 111 at 739 (4th ed. 1971)). A communication is conditionally privileged, however, if it is "made upon a proper occasion, from a proper motive, and * * * based upon reasonable or probable cause." *Id.* at 256–57 (quoting *Hebner v. Great N. Ry.*, 78 Minn. 289, 292, 80 N.W. 1128, 1129 (1899)). The supreme court explained:

> The doctrine of privileged communication rests upon public policy considerations. * * * [T]he existence of a privilege results from the court's determination that statements made in particular contexts or on certain occasions should be encouraged de-

spite the risk that the statements might be defamatory.

*Lewis v. Equitable Life Assur. Soc.*, 389 N.W.2d 876, 889 (Minn.1986).

 Whether a particular communication is conditionally privileged presents a question of law. *Id.* If a defendant establishes that a conditional privilege exists, the burden shifts to the plaintiff to show that the defendant abused the privilege. *Stuempges*, 297 N.W.2d at 257. The plaintiff meets this burden by proving malice, which requires a showing that the defendant "made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Id.* (quoting *McKenzie v. William J. Burns Int'l Detective Agency*, 149 Minn. 311, 312, 183 N.W. 516, 517 (1921)). Although the jury normally determines whether a defendant abused its privilege, summary judgment is appropriate when "[t]he trial court record shows no facts which would lead to the conclusion that [the defendant] acted against [the plaintiff] out of malice or ill will." *Harvet v. Unity Medical Ctr.*, 428 N.W.2d 574, 579 (Minn.App.1988).

 The supreme court has held that statements made by an employer when investigating employee misconduct are conditionally privileged. *McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 97, 235 N.W.2d 371, 374 (1975). The court explained that "the employer has an important interest in protecting itself and the public against dishonest or otherwise harmful employees." *Id.* Further, in *Gunnufson v. Onan Corp.*, this court affirmed summary judgment in favor of a corporation where employees made allegedly defamatory statements at a management meeting regarding the reason for plaintiff's dismissal. 450 N.W.2d 179, 183 (Minn.App. 1990). The court found that the communications were within the conditional privilege and were not actionable without proof of malice. *Id.*

 The allegedly defamatory statements in this case, all of which the record reflects were communicated at task force meetings or Church council meetings and dealt with Singleton's actions as a pastor, fall within the Church's conditional privilege.

**616**

The record reveals no facts that would lead to the conclusion that Church members acted against Singleton out of the kind of malice or ill will that defeats the privilege. As a result, there is no question of material fact concerning the existence of malice. We conclude, therefore, that the district court correctly granted summary judgment in favor of the Church on Singleton's defamation claim.

### B. Claim of Defamation Against the Synod

The district court granted summary judgment to the Synod on Singleton's defamation claim, citing the constitutional prohibition against excessive entanglement. Because we find that the allegedly defamatory statement was conditionally privileged and that Singleton did not show malice, we do not address the constitutional issue.

Singleton asserts that he was defamed when a bishop's assistant told a Church official that Singleton was "paranoid." The record shows that the statement was made during a phone conversation in which the Church official and the bishop's assistant discussed conflicts in the Church, Singleton's position at the Church, and Singleton's compensation. Under these circumstances, we conclude that the bishop's assistant's statement falls within the conditional privilege. The record reveals no facts that would lead to the conclusion that the bishop's assistant made the statement out of malice or ill will. There is no question, therefore, of material fact concerning the existence of malice and summary judgment in favor of the Synod was appropriate on Singleton's claim of defamation.

### DECISION

The constitutional prohibition against excessive governmental entanglement with internal church affairs precludes judicial review of Singleton's claims of breach of contract, wrongful discharge, promissory estoppel, breach of implied covenant of good faith and fair dealing, tortious interference with contract, and intentional infliction of emotional distress. Additionally, the statements Singleton alleges to be defamatory were conditionally privileged, and the record does not

reveal any facts indicating that the statements were made out of malice or ill will that would defeat the privilege. The district court, therefore, did not err by granting summary judgment to the Church and the Synod on all claims.

**Affirmed.**