Pat CARGILL and Sherman Arthur, Appellant,

v.

GREATER SALEM BAPTIST CHURCH; William M. Blackford, IV; Willie Newby, Sr.; Phillip Stepteau; Larry Austin; Alex Jones; George Johnson; Michael Royston; Walter Parmer; James Toney; Jasper Crenshaw; and Kevin Burns, Appellees.

No. 2005–CA–001110–MR.

Court of Appeals of Kentucky.

July 14, 2006.

Rehearing Denied Aug. 31, 2006.

Discretionary Review Denied by Supreme Court Feb. 14, 2007.

---

20. *Id.*

J. Key Schoen, Louisville, KY, for appellants.

Wayne J. Carroll, Deborah L. Harrod, Louisville, KY, for appellees.

Before GUIDUGLI, HENRY, and SCHRODER, Judges.

*OPINION*

GUIDUGLI, Judge.

Pat Cargill (Cargill) and Sherman Arthur (Arthur) appeal from an order of the Jefferson Circuit Court granting the Appellees'[1] motion for summary judgment. Cargill and Arthur contend that the circuit court incorrectly determined that the Ap-

---

1. The Appellees include Greater Salem Baptist Church, Inc., its senior Pastor, and its Deacons.

pellees' oral and written statements were not actionable as defamatory. Having concluded that the circuit court properly granted summary judgment, we affirm.

Cargill and Arthur are former members of Greater Salem Baptist Church (Greater Salem), which is a Congregationalist church founded under the National Baptist Convention in alliance with the Southern Baptist Church. The recognized leaders of the church are the Pastor and the Deacons; however, the true governing body of Greater Salem is its congregation. The Bible is the ultimate source of authority for Greater Salem and its leaders.

Under the guidance of Matthew 18:15–18, a disciplinary committee comprised of the Deacons and the Pastor, deals with disciplinary matters requiring action. If the disciplinary committee is unable to resolve an issue, the matter is presented to the congregation. The congregation may either admonish the offender or strip the offender of church membership.

This appeal stems from a congregational meeting held by the Deacons and the Pastor after a church service on Sunday, September 22, 2002. This meeting resulted from disciplinary issues concerning the church and a few of its members. Specifically, the Deacons addressed certain allegations that were being made against the Pastor by a "Concerned Members" group. The "Concerned Members" group was formed by a group of Greater Salem members after April Smith, a member of the church, alleged that she had an extramarital affair with the Pastor. The group wrote letters to the disciplinary committee demanding action, held meetings, and sent unauthorized letters to members of the church. The disciplinary committee stated that it did not feel that any additional action was necessary regarding the allegations of the Pastor's affair.

In addition to addressing the Pastor's alleged affair, four Deacons recommended that the congregation terminate the church membership of two members of the "Concerned Members" group; Cargill and Arthur. The recommendation for Cargill's termination stemmed from a series of two events. The first issue concerned the Pastor's alleged affair with April Smith. The Deacons claimed that Cargill spearheaded the "Concerned Members" group and advised April Smith to write a letter that accused the Pastor of having an extramarital affair with her. They also alleged that Cargill was the owner of a Post Office box which sent unauthorized mailings to church members.

The Deacons also addressed issues concerning the cleaning services Cargill provided for Greater Salem. In 1999, Greater Salem hired Cargill's cleaning service, De's Dusters, to do janitorial work for the church. Greater Salem accepted Cargill's bid because she offered to provide her own cleaning supplies, which would result in a $2,000 annual savings for the church. On February 10, 2002, the Deacons sent Cargill a letter to inform her that the church would no longer need her cleaning services. The Deacons alleged that they had received complaints about the cleanliness of the church and about inappropriate behavior by De's Dusters' employees. Additionally, the Deacons claimed that Cargill owed the church $2,184.50 for supplies she charged to the church. Cargill did not reimburse the church, because she felt that the supplies were personal to the church and not part of the cleaning supplies she agreed to provide. However, the Deacons alleged that, pursuant to their agreement, De's Dusters should have provided the supplies.

The recommendation for Arthur's termination resulted from his work as the Deacon in charge of the music program.

There were several recordings made in 2001 of the church choir, and Arthur was in charge of selling and distributing the recordings. The Deacons alleged that Arthur failed to maintain an accurate record of funds collected on the sale of the tapes and CD's.

Additionally, the Deacons alleged that Arthur mishandled the purchase of a drum set, costing Greater Salem $2,500. After being asked by the Deacons to do research on a new drum set for the church, Arthur conducted research on the Internet and obtained a general description from a brochure. Arthur recommended a drum set to the church, which Greater Salem purchased. Unfortunately, the drum set was too small and was non-returnable.

In addition to holding the congregational meeting on September 22, 2002, the disciplinary committee sent out a letter to every person on the church's mailing list. Although the letter was dated September 22, 2002, it was sent out sometime in the middle of October, 2002. The "September 22, 2002" letter generally paralleled the allegations made against Cargill and Arthur in the congregational meeting on September 22, 2002.[2] However, there is some dispute as to whether the statements made in the letter were less severe than what was actually stated during the September 22, 2002, oral presentation to the congregation.[3]

On March 27, 2003, Cargill and Arthur brought an action against Greater Salem, the senior Pastor, and the church Deacons for defamation. The Appellees filed their first motion for summary judgment prior to taking any discovery, which was denied on June 11, 2003. After interrogatories were served and answered and depositions were taken, the Appellees again moved for summary judgment. The circuit court granted summary judgment in favor of the Appellees on January 25, 2005, and this appeal followed.

On appeal, Cargill and Arthur contend that the circuit court erred in granting summary judgment in favor of the Appellees, claiming that the September 22, 2002, oral presentation to the congregation, the "September 22, 2002" letter, and the recommendation to terminate their memberships were defamatory and were not privileged communications. The proper appellate review of summary judgment is provided in *Scifres v. Kraft:*[4]

The standard of review on appeal of a summary judgment is whether the trial

---

**2.** The "September 22, 2002" letter stated in relevant part as follows:

Sherman Arthur—Former Deacon/Director—We believe he failed to maintain accurate records of Funds collected on Sale of Tapes & CD's. In our opinion, he mishandled the purchase of Drums, thus costing Church over $2,500.00. In our opinion, he was aware of church by-laws yet violated them.

Pat Cargill (De's Dusters)—Former Leader—One term of her employment was that she would buy all supplies, yet we believe she charged the church several thousand dollars for supplies purchased. In our opinion she was April Smith's Advisor. In our opinion Pat directed April to write the letter that accused Rev. W.M. Blackford IV of improper behavior. During the special

committee meeting Pat stated she did not need to know Rev. William M. Blackford's side of the story. We believe Pat is the owner of the Post Office Box which sent unauthorized mailing to church membership.

**3.** Cargill and Arthur claim that the Deacons made oral statements alleging that Cargill and Arthur stole money from the church and lied about matters related to the alleged thefts. The Appellees claim that the oral statements made by the four Deacons were read from parts of the "September 22, 2002" letter that was later sent to every person on the church's mailing list.

**4.** 916 S.W.2d 779, 781 (Ky.App.1996).

court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue. *Goldsmith v. Allied Building Components, Inc.,* Ky., 833 S.W.2d 378, 381 (1992). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476, 480 (1991). Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest,* 807 S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose,* Ky., 683 S.W.2d 255 (1985).

■ Furthermore, the determination of the existence of a privilege is a matter of law.[5] Therefore, it is upon Cargill and Arthur to show that either there was no privilege under the circumstances or that the privilege was abused.[6]

While there is minimal Kentucky case law on this issue, this Commonwealth as well as the majority of other jurisdictions, recognizes that civil courts should not interfere with internal church matters.[7] As stated in *Music v. United Methodist Church,* issues of faith, internal organization, and church discipline are governed by ecclesiastical rule, custom, and law, and civil courts generally have no role in deciding such ecclesiastical questions.[8]

■ Furthermore, the qualified privilege afforded to defamatory statements made in the course of church related matters is also recognized in this Commonwealth. As early as 1872, the former Kentucky Court of Appeals in *Lucas v. Case* recognized that a member of a church "impliedly at least, if not expressly, covenants to conform to the rules of the church, to submit to its authority and discipline."[9] Similar to the instant case, *Lucas* involved a defamation suit brought by a church member against his church governing board for publishing a statement that alleged that he used improper and unchaste language in front of a female member.[10] The church governing board also recommended that the appellant's church membership be withdrawn.[11] In determining that the statements were privileged communications, the court held:

> [W]ords spoken or written in the regular course of church discipline, or before a tribunal of a religious society, to or of members of the church or society, are as among the members themselves privileged communications, and are not actionable without express malice.[12]

In a later decision, the former Kentucky Court of Appeals in *Wolff v. Benovitz* stated:

> While it seems that no privilege attaches to defamatory statements made by a clergyman from his pulpit, a different rule governs communications between

---

5. *Columbia Sussex Corp., Inc. v. Hay,* 627 S.W.2d 270, 276 (Ky.App.1981).

6. *Id.*

7. *Marsh v. Johnson,* 259 Ky. 305, 82 S.W.2d 345, 346 (1935).

8. 864 S.W.2d 286, 287 (Ky.1993).

9. 72 Ky. (9 Bush) 297, 1873 WL 6630, *3 (1872).

10. *Id.* at *1–2.

11. *Id.*

12. *Id.* at *3.

church members and authorities in respect of organizational and administrative matters; and the courts appear to agree that in the absence of malice, members may discuss the character of their pastor, communicate rumors of misconduct to each other, and prefer charges whenever there appears to be any foundation therefor.[13]

Cargill and Arthur contend that the oral and written statements were not privileged communications. Citing to *Presbyterian Church v. Hull Church*,[14] Cargill and Arthur argue that a privilege is not applicable because the oral and written statements do not require any analysis of church doctrine. Thus, Cargill and Arthur contend that the oral and written statements are unprotected speech for purposes of the First and Fourteenth Amendments to the United States Constitution.

■ We find no merit, under the facts of this case, in Cargill and Arthur's argument that there is no question of church doctrine. First, Cargill and Arthur incorrectly apply *Presbyterian Church* to our case.[15] The United States Supreme Court in *Presbyterian Church* concluded that a state may resolve a property dispute if it does not involve controversy over church doctrine and practice; however, civil courts cannot make any determination about ecclesiastical questions.[16] Unlike *Presbyterian Church*, this case does not involve a property dispute.[17] Furthermore, this case involves statements made by Greater Salem's disciplinary committee in the course of a church disciplinary matter. Specifically, this controversy requires the interpretation of the "Discipline" section of Greater Salem's By–Laws.[18] Therefore, this controversy rests upon the interpretation of ecclesiastical matters, and thus the statements are privileged communications if made in the absence of express malice.[19]

■ Because the oral and written statements are privileged communications, Cargill and Arthur must show that the privilege was abused.[20] Therefore, Cargill and Arthur must prove that the statements were made with malice, which is a showing that the statements were made "with knowledge that it was false or with reckless disregard of whether it was false or not." [21] Although the jury normally determines whether a privilege was abused, a motion for summary judgment is appropriate when the record shows no facts which would lead to the conclusion that the Appellees acted with malice.[22]

13. 301 Ky. 661, 192 S.W.2d 730, 733 (1945).

14. 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969).

15. *Id.*

16. *Id.*

17. *Id.*

18. Church membership may be terminated in accord with Section VII of Greater Salem's By–Laws. Discipline, Section 2, states in relevant part as follows:

Should any case of gross breach of covenant or of public scandal occur, the Pastor and the Deacons shall compose a commit-

tee on Church Discipline to receive in writing such matters deemed to require action by the Committee. The Committee shall endeavor to remove the offense and restore the offender, and if this effort fails, shall report the case to the Church.

19. *Lucas v. Case*, 72 Ky. (9 Bush) 297, 1873 WL 6630, *3 (1873).

20. *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 276 (Ky.App.1981).

21. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

22. *Stewart v. Hall*, 7 Ky.L.Rptr. 323, 83 Ky. 375, 1885 WL 5815, *4 (1885); *Washburn v.*

Cargill and Arthur contend that summary judgment was not proper because the Appellees made defamatory statements in "bad faith." Specifically, Cargill and Arthur feel that the allegations made by the Appellees on September 22, 2002 were a pretext to the Appellees' "true motivation to send a warning of silence to the Plaintiffs and other members of [Greater Salem] who were questioning the actions of Defendant Pastor Blackford." Cargill and Arthur further contend that there were issues of "bad faith" with regard to the non-disclosure or destruction of relevant evidence. Cargill and Arthur believe that there was an audio recording of the September 22, 2002 congregational meeting. While the Appellees claim that they do not have a taping of the meeting, Cargill and Arthur contend that there may be an opportunity to discover if the congregational meeting was taped or if it was destroyed by the church in "bad faith." Therefore, Cargill and Arthur argue that summary judgment prevented them from possibly obtaining evidence to show that the Appellees acted in "bad faith."

As stated in *Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.*, a party responding to a motion for summary judgment cannot complain of the lack of a complete factual record when it can be shown that the respondent has had an adequate opportunity to undertake discovery.[23] A review of the record compiled in this matter indicates that there was substantial pre-trial activity and that Cargill and Arthur had more than ample opportunity to conduct discovery. Therefore, we conclude that Cargill and Arthur presented no evidence, apart from conclusory allegations based on suspicion and conjecture, indicating that the Appellees were motivated by malice.

Having concluded that the Appellees' oral and written statements were privileged communications made in the absence of malice, we hold that the statements are not actionable as defamation. Therefore, the circuit court did not err in granting summary judgment in favor of the Appellees.

Cargill and Arthur also allege that the circuit court erred in determining that the oral and written statements were "pure" opinion and absolutely privileged. This issue is rendered moot given our conclusion that the circuit court properly granted summary judgment.

For the foregoing reasons, we affirm the order of the Jefferson Circuit Court.

ALL CONCUR.

---

*Lavoie*, 437 F.3d 84, 90 (D.C.Cir.2006); *Singleton v. Christ the Servant Evangelical Lutheran Church*, 541 N.W.2d 606, 615 (Minn.Ct. App.1996); *Carter v. Aramark Sports and Entertainment Services Inc.*, 153 Md.App. 210, 835 A.2d 262, 281 (2003); *Cooper v. Hodge*, 28 A.D.3d 1149, 814 N.Y.S.2d 447, 449 (N.Y.App.Div.2006).

**23.** 579 S.W.2d 628, 630 (Ky.App.1979).