CROSBY–EDWARDS et al., Appellees,

v.

OHIO BOARD OF EMBALMERS AND FUNERAL DIRECTORS, Appellant.

[Cite as *Crosby–Edwards v. Ohio Bd. of Embalmers & Funeral Directors,* 175 Ohio App.3d 213, 2008-Ohio-762.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–1220.

Decided Feb. 26, 2008.

Gregory S. DuPont, for appellees.

Marc Dann, Attorney General, and Laura A. Meechan, for appellant.

McGRATH, Presiding Judge.

{¶ 1} Appellant, the Ohio Board of Embalmers and Funeral Directors, appeals from a judgment of the Franklin County Court of Common Pleas that reversed the board's decision to revoke the license of appellee Crosby–Edwards Funeral Home. For the following reasons, we reverse that judgment.

{¶ 2} We note, for the purpose of clarity, that the name given to appellee Leeza Crosby–Edwards at birth was Lisa Rochelle Howard. Crosby has changed her name twice: first, to Leeza R. Crosby; and then, in January 2005, to Leeza R. Crosby–Edwards.

{¶ 3} Crosby is the owner of the Crosby–Edwards Funeral Home, a family-owned business that she acquired when her mother passed away. Crosby does not hold a license issued by the board under R.C. Chapter 4717, and pursuant to R.C. 4717.06(B)(3), funeral homes may be "operated only under the name of a holder of a funeral director's license issued by the board." Thus, to lawfully operate the funeral home, Crosby employed Jeffrey L. Edwards, a licensed

funeral director, to operate the funeral home and serve as its funeral director. He served in that capacity from March 2004 until he resigned in October 2005.

{¶ 4} On December 14, 2004, the board received a complaint from Roland Jackson ("the Jackson complaint"), alleging that Crosby and the funeral home failed to transfer pre-need-funeral-contract funds to another funeral home. On January 6, 2005, the board sent Crosby a copy of the Jackson complaint and requested that she submit a written response, which she did on January 17, 2005. The response to the board was signed by Crosby, as owner of the funeral home, as well as Edwards, as the licensed funeral director for the funeral home.

{¶ 5} On July 6, 2005, the board sent Edwards a certified letter to the funeral home's address, advising him that the board had voted to charge him and the funeral home with a violation of R.C. 4717.14(A)(4), committing immoral or unprofessional conduct, in connection with the Jackson complaint.[1] The letter further advised Edwards that he was entitled to a hearing and that if he wished to request a hearing, he was to submit a written request within 30 days. The letter also identified the licenses held by Edwards that would be subject to the board's action: the funeral home's license, Edward's funeral director's license, and Edward's embalmer's license.

{¶ 6} Crosby sent the board a letter dated July 11, 2005. Therein, she stated that she was in receipt of the board's letter to Edwards, and she requested clarification of the charges. Crosby then went on to accuse the board of acting in a "malicious" and "frivolous" manner and further declared that any action brought against the funeral home "will be found in the Court of Common Pleas to be an act of malicious prosecution, malfeasance, and an abuse of [the board's] discretion."

{¶ 7} Two days later, on July 13, 2005, Crosby sent the board two more letters. One letter purported to clarify her letter dated July 11, 2005. Therein, using the first-person plural, Crosby acknowledged the board's advisement to Edwards regarding the 30–day period for requesting an adjudication hearing, and then explained:

> We have not yet composed any correspondence regarding our demand for a hearing. Our letter was simply to clear up issues, regarding the notification of the charges and to clarify what the charges were. We are waiting to hear from the Ohio Attorney General Office, before we request a hearing. Our letter dated July 11, 2005 is not to be construed as a request for a hearing. I will

---

1. As will be explained in detail infra, the board notified Edwards of its intent to charge the funeral home because, pursuant to R.C. 4717.06(B)(3), the licensed funeral director is the holder of the funeral home's license.

address the charges against the Crosby–Edwards Funeral Home, and Jeffrey L. Edwards will address the charges against his licenses.

{¶ 8} In her second letter to the board, Crosby levied accusations of dereliction of duties and extortion, among others things, against it. Also included in that letter were 11 separate requests for information pursuant to the Freedom of Information Act; each request contained over a dozen additional requests, and concerned records kept by the board regarding other funeral homes in Columbus, Ohio, as well as miscellaneous internal board documents and records.

{¶ 9} On July 14, 2005, Edwards sent the board a letter, which confirmed receipt of the board's letter dated July 6, 2005, and requested a hearing on the charges against him. Upon receipt of Edwards's letter, the board notified him that pursuant to R.C. 119.07 and 119.08, it would hold an adjudication hearing for Edwards and the funeral home on July 29, 2005. The board then sua sponte continued the hearing to a mutually agreeable time. Edwards responded to the board's letter on August 1, 2005, advising the board that he had retained an attorney and provided the board with his attorney's contact information.

{¶ 10} On August 8, 2005, the board responded to Crosby's public-records requests, which totaled over 4,300 copied pages of documents and record. Upon receipt of these documents, Crosby wrote the board and accused it of withholding documents responsive to her requests. With the documents that she had been provided, Crosby waged a war; she filed various complaints with the board, charging both members of the board, as well as several funeral homes that were the subjects of her requests, with assorted statutory violations.

{¶ 11} Crosby also sent the board a letter on August 15, 2005, in which she continued her campaign of insults, asserting that the "actions of the Board support a charge of Malfeasance, Non Malfeasance, Corruption of office, & Dereliction of Duty; which are a violation of our Civil Rights protected under the Ohio Constitution."

{¶ 12} The board wrote a letter to Edwards's attorney on September 12, 2005, requesting a list of possible dates for the adjudication hearing, as well as to confirm his representation of Edwards and the funeral home. Edwards's attorney responded to the board's letter on September 16, 2005, explaining that while he had been retained to represent Edwards, he did not represent the funeral home or Crosby in any capacity. The record discloses that on September 15, 2005, Edwards submitted a formal letter of resignation to Crosby effective October 1, 2005.

{¶ 13} On October 26, 2005, the board sent Edwards a certified letter advising him that an adjudication hearing had been scheduled for November 18, 2005. Also on October 26, 2005, the board sent, by certified mail, a letter to Michael

J.K. Jones, who had replaced Edwards as the licensed funeral director, and, therefore, was the current holder of the funeral home's license. In that letter, the board advised Jones that although the funeral home had not requested a hearing, pursuant to *Goldman v. State Med. Bd. of Ohio* (1996), 110 Ohio App.3d 124, 673 N.E.2d 677, one would be held on November 18, 2005.

{¶ 14} The hearing took place as scheduled. Several witnesses testified at the hearing, including Jackson and Edwards, but neither Jones nor Crosby appeared. Following the hearing, the hearing examiner issued a report on February 15, 2006, that contained proposed findings of fact and conclusions of law. The hearing examiner found that Edwards and the funeral home had committed the violation as charged and recommended that Edwards's funeral director's and embalmer's licenses be suspended for 30 days and that the funeral home's license be revoked. That same day, the board sent Edwards a copy of the hearing examiner's report and recommendation, advising him that he had ten days within which to file written objections. The board also sent, by certified mail, a copy of the hearing examiner's report and recommendation to David R. Adams, who in December 2005, had replaced Jones as the licensed funeral director for the funeral home and the holder of its license.

{¶ 15} On February 23, 2006, Crosby sent a letter to the board by fax, requesting that it produce numerous documents relating to the funeral home and the adjudication hearing that took place on November 18, 2005. In her letter, Crosby explained that she needed these documents to be produced by the next day in order to file objections to the hearing examiner's report. The board responded to Crosby's request, by fax, on February 24, 2007. It advised Crosby that it had copied the exhibits introduced at the hearing, which were available for her immediate pick-up, but given the voluminous nature of her request, the other documents would not be available until March 3, 2006. The board also granted Crosby an extension until March 6, 2006, to file her objections.

{¶ 16} On February 27, 2006, the board received Edwards's objections. That same day, the board received a letter from an attorney who had been retained to represent Crosby and the funeral home. In his letter, Crosby's attorney requested that the hearing examiner's report and recommendation be set aside and a hearing de novo scheduled, or in the alternative, that he be granted a 30–day extension to file objections.

{¶ 17} In a letter dated March 2, 2006, the board advised Crosby's attorney that it was denying the request for an additional extension, but indicated that it would consider the request for a hearing de novo when it met to review the report and recommendation. When the board met, however, it voted to deny Crosby's request for a hearing de novo and approved the hearing examiner's report and recommendation.

{¶ 18} Crosby and the funeral home timely appealed the decision of the board to the Franklin County Court of Common Pleas, asserting (1) failure of due process, (2) abuse of discretion, and (3) mistake of law. The board moved to dismiss the appeal, asserting, inter alia, that the trial court lacked subject-matter jurisdiction. Citing *Paine Funeral Home v. Bd. of Embalmers & Funeral Directors of Ohio*, 150 Ohio App.3d 291, 2002-Ohio-6474, 780 N.E.2d 1036, for the proposition that the board has no jurisdiction over unlicensed owners, the board argued that neither Crosby nor the funeral home had interests that were the subject of an adjudication by the board, and, therefore, neither Crosby nor the funeral home could be construed as parties under R.C. 119.01(F). Therefore, according to the board, neither Crosby nor the funeral home had standing to appeal pursuant to R.C. 119.12. In response, Crosby argued that she had standing to appeal because she had a pecuniary interest in the funeral home that was the subject of the adjudication and her interests were prejudiced by the board's decision to revoke its license.

{¶ 19} The trial court denied the board's motion, finding that Crosby had standing to appeal the board's decision because "the revocation of the funeral home's license create[d] an immediate and pecuniary result" for Crosby. Having determined that Crosby had standing, the trial court proceeded to consider the merits of her appeal, and, ultimately, granted Crosby's motion to remand.

{¶ 20} The board filed a timely appeal to this court, and raises the following four assignments of error:

[1.] The trial court erred as a matter of law when it determined that Leeza Crosby–Edwards had standing to appeal under R.C. 119.12.

[2.] The trial court erred as a matter of law when it denied the Board of Embalmers and Funeral Director's motion to dismiss because Leeza Crosby–Edwards' appeal is moot.

[3.] The trial court erred as a matter of law when it determined that the Board of Embalmers and Funeral Directors violated Leeza Crosby–Edwards due process rights.

[4.] The trial court erred as a matter of law when it ordered this matter remanded back to the Board of Embalmers and Funeral Directors.

■ {¶ 21} We analyze the board's first and second assignments of error together, as they raise interrelated issues concerning whether the trial court erred in determining that it had subject-matter jurisdiction over the appeal. The board asserts that the trial court erred in ruling that Crosby had met the requirements for filing an appeal under R.C. 119.12 and denying the board's motion to dismiss the appeal. A motion to dismiss for lack of subject-matter jurisdiction inherently raises questions of law, and our review is de novo. *Groza–*

*Vance v. Vance,* 162 Ohio App.3d 510, 2005-Ohio-3815, 834 N.E.2d 15, ¶ 13. Therefore, we consider the first two assignments of error without deference to the trial court's decision and begin with the statutory schemes at issue.

{¶ 22} The starting place for our analysis is R.C. Chapter. 4717. Funeral homes must be licensed by the board in order to lawfully operate. R.C. 4717.06(A); Ohio Adm.Code 4717–1–16. And, as previously explained, funeral homes are "established and operated only under the name of a holder of a funeral director's license issued by the board" and "the holder of the funeral home license" is the "funeral director licensed under [R.C. Chapter 4717] who is actually in charge of and ultimately responsible for the funeral home." R.C. 4717.06(B)(3); Ohio Admin.Code 4717–1–16. Although a funeral home may be issued a license, only its funeral director holds its license. Stated another way, the funeral home's license is statutorily dependent upon the funeral director. Thus, while a sole proprietorship may own a funeral home, R.C. 4717.06(B)(3) makes clear that the funeral home can operate as such only with the involvement of a licensed funeral home director.

{¶ 23} If the board becomes aware that "any person holding or claiming to hold a license" issued under R.C. Chapter 4717 is committing acts that, if proven, would violate R.C. Chapter 4717, it has an affirmative duty to investigate. R.C. 4717.03(F). If after investigating, the board "has reasonable cause to believe that the person investigated is violating any provision of [R.C. Chapter 4717]," then "it may, after providing the opportunity for an adjudicatory hearing, issue an order directing the person to cease the acts or practices that constitute the violation." R.C. 4717.03(G).

{¶ 24} The board is required to hold the adjudicatory hearing in accordance with R.C. Chapter 119, except that (1) "the notice informing the person of the person's right to a hearing" is to be sent by certified mail, (2) "[t]he person is entitled to a hearing only if the person requests a hearing" and the board receives said request within 30 days of the notice sent by certified mail, and (3) a stenographic record shall be made, "regardless of whether the record may be the basis of an appeal to a court." R.C. 4717.03(G). Because the holder of the funeral home's license is its funeral director, it follows that the funeral director is the person to whom notice is given.

{¶ 25} R.C. 4717.14 governs disciplinary actions by the board, and their decisions are appealable to the common pleas court under R.C. 119.12. That statute, provides:

Any party adversely affected by any order of an agency issued pursuant to an adjudication * * * revoking or suspending a license * * * may appeal from the order of the agency to the court of common pleas of the county in which the

place of business of the licensee is located or the county in which the licensee is a resident * * *.

{¶ 26} In interpreting the above portion of R.C. 119.12, we must look to the statutory definitions contained in R.C. 119.01:

(D) "Adjudication" means the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature.

* * *

(F) "Person" means a person, firm, corporation, association, or partnership.

(G) "Party" means the person whose interests are the subject of an adjudication by an agency.

{¶ 27} Against this statutory backdrop, and mindful of the well-settled principle of statutory construction that words used in a statute are to be given their plain and ordinary meaning unless otherwise indicated, *Ohio Assn. of Pub. School Emp. v. Twin Valley Local School Dist. Bd. of Edn.* (1983), 6 Ohio St.3d 178, 181, 6 OBR 235, 451 N.E.2d 1211, we conclude that Crosby does not have standing to appeal under R.C. 119.12, but the funeral home does.[2]

### A. Crosby Lacks Standing

{¶ 28} To begin, we find that Crosby is not a "party" as that term is defined in R.C. 119.01(G). The jurisdiction of the board is limited to those issued a license under R.C. Chapter 4717. R.C. 4717.03(F); see also *Paine,* 150 Ohio App.3d 291, 2002-Ohio-6474, 780 N.E.2d 1036, at ¶ 13. Consequently, the board can only adjudicate the "interests" of a person who holds such a license, i.e., the interests that a licensee would possess. Although Crosby has a pecuniary or proprietary interest in the funeral home, she does not hold the license for the funeral home, and therefore, her "interests" were not the subject of an adjudication by the board. See, e.g., *Santa v. Ohio Dept. of Human Serv.* (2000), 136 Ohio App.3d 190, 194, 736 N.E.2d 86 (son was not a "party," because his interests [i.e., his personal liability for nursing-home services performed for his mother, which is separate and distinct from his mother's interest in obtaining Medicaid

---

**2.** We note that the notice of appeal filed with the common pleas court indicates two appellants: Crosby and the funeral home. At some point, however, the parties, as well as the trial court, began to treat Crosby as the only appellant. The appellate briefs filed with this court continued that pattern. As our opinion makes clear, however, Crosby and the funeral home are separate appellants whose legal rights differ. Therefore, we have bifurcated our analysis.

benefits] were not the subject of the adjudication by the agency). Thus, Crosby does not meet the definition of a "party" in R.C. 119.01(G).

{¶ 29} Although neither party offered any argument based on the structure and language contained in R.C. 119.01(D) and (G), our independent examination of these subsections buttresses the conclusion that Crosby is not a party entitled to appeal under R.C. 119.12. With respect to R.C. 119.01(G), by preceding the word "person" with the definite article "the," as opposed to the more general "a" or "any," the legislature evidenced its intent to limit standing to *only* those persons whose interests were adjudicated by an agency. See, e.g., Black's Law Dictionary (6th Ed.1990) 1477. ("In construing statute, definite article 'the' particularizes the subject which it precedes and is word of limitation as opposed to indefinite or generalizing force 'a' or 'an' "); *Onink v. Cardelucci* (C.A.9 2002), 285 F.3d 1231, 1234; *United States v. Kanasco, Ltd.* (C.A.4 1997), 123 F.3d 209, 211; *BP Am. Prod. Co. v. Madsen* (Wyo.2002), 53 P.3d 1088, 1092. And here, Crosby was never issued a license by the board, so her interests were not the subject of the adjudication by the board.

{¶ 30} Similarly, Crosby lacks standing because she cannot be considered a "specified person" under R.C. 119.01(D). Given that the board's jurisdiction is limited to those persons licensed under R.C. Chapter 4717, it can make adjudications only as to such persons. Thus, in the context of R.C. Chapter 4717, it is reasonably logical to conclude that R.C. 119.01(D)'s reference to a "specified person" means the person issued a license pursuant to that chapter. Cf. *Northeast Ohio Harness v. Ohio State Racing Comm.* (July 18, 1985), Franklin App. No. 85AP–221, 1985 WL 10080 (appellants lacked standing as parties under R.C. 119.12 because they had not applied for permits, and therefore, were not persons or "specified persons").

{¶ 31} There is, however, one issue that was not raised by the parties that is nonetheless dispositive of this appeal: Crosby lacks standing because she is not a party "adversely affected" by the board's decision. Crosby was not a party to the proceedings before the board, nor did she participate in them. The Supreme Court of Ohio has held that "[u]nless a statute provides otherwise, no person can appeal from an adjudicatory order of an administrative agency to which he was not a party." *Blue Cross of Northeast Ohio v. Ratchford* (1984), 21 Ohio App.3d 113, 114–115, 21 OBR 120, 487 N.E.2d 339, citing *Harrison v. Pub. Util. Comm.* (1938), 134 Ohio St. 346, 347, 12 O.O. 316, 16 N.E.2d 943; see also *Farrand v. State Med. Bd.* (1949), 151 Ohio St. 222, 226, 39 O.O. 41, 85 N.E.2d 113; *In re Application of Cleveland Trust Co. to Merge or Consolidate with Cuyahoga Bank* (Jan. 29, 1974), Franklin App. No. 73AP–226, 1974 WL 183756 ("Even though appellants filed objections to the consolidation or merger of The Cleveland Trust Company with The Cuyahoga Bank, we find that they had no statutory right to

file such objections and were not entitled to a hearing thereon. * * * [A]ppellants were not proper parties to such proceedings and have no right to appeal from any 'order' resulting from the proceedings"); *Hills & Dales v. Ohio Dept. of Edn.*, Franklin App. No. 06AP–1249, 2007-Ohio-5156, 2007 WL 2812988, ¶ 20; *Singh v. State* (1982), 7 Ohio App.3d 269, 270, 7 OBR 349, 455 N.E.2d 522 ("Appellant has no standing to appeal under this provision as he was not a party to the investigation pursuant to R.C. 124.56. R.C. 119.01(G) defines a party as 'the person whose interests are the subject of an adjudication by an agency.' Appellant's interests were not adjudicated").

{¶ 32} In this case, because Crosby was not a party to the proceedings before the board, she is not entitled to appeal the board's order, and no statute provides for the appeal of an order from the board by an appellant who was not a party to the underlying administrative proceeding. See *Shisler v. Dept. of Admin. Servs.* (Dec. 23, 1986), Franklin App. No. 86AP–427, 1986 WL 14877 ("the issue of party status in administrative proceedings is set forth by statute").

{¶ 33} The concept underlying this rule is fundamental and has been applied by courts in varying contexts. See, e.g., *ABF Emp. Assn. v. Teamsters Local 957* (Jan. 11, 1980), Montgomery App. No. 6359, 1980 WL 352487 ("If they are not parties to a court proceeding, they are not entitled to a review of the judgment or order made as a result of those proceedings"); *Curtiss–Wright Corp. v. Cornell* (1955), 100 Ohio App. 240, 58 O.O. 217, 133 N.E.2d 184 ("The appellant, Curtiss–Wright, was not a party to this proceeding; was not made a party; was not an 'employer' within the provisions of Section 4141.26, Revised Code; and was not entitled or empowered to appeal from the order"); *In re Estate of Magdzicki* (1942), 71 Ohio App. 282, 284, 26 O.O. 127, 49 N.E.2d 205 ("The consul not having been a party to the arbitration proceedings, the order and judgment of the Probate Court with respect thereto was not such an order or judgment as would permit an appeal therefrom by him"). Indeed, the federal equivalent to R.C. 119.12, the Administrative Orders Review Act, Section 2344, Title 28, U.S.Code,[3] which contains similar wording, has been construed to limit the right of appeal to those who actually participated in the agency proceeding. See, e.g., *Am. Trucking Assns. v. Interstate Commerce Comm.* (C.A.5 1982), 673 F.2d 82.

{¶ 34} Our determination that Crosby lacks standing also comports with a previous decision from this court, *Miami Univ. v. State Emp. Relations Bd.* (1990), 70 Ohio App.3d 514, 591 N.E.2d 415, which likewise addressed standing under R.C. 119.12. In that case, we stated:

---

**3.** "Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." Section 2344, Title 28, U.S.Code.

R.C. 119.12 grants a right of appeal from an agency adjudication order to any party adversely affected by such order. Standing to appeal an adverse order arises under R.C. 119.12 in favor of parties who are entitled to statutory notice of an administrative proceeding and have the right to participate in any hearing conducted by the administrative agency.

Id. at 518, 591 N.E.2d 415. After discussing other cases in which this court addressed standing in administrative appeals, we concluded:

In sum, if a "person"—as defined in R.C. 119.01(F)—is statutorily granted specific rights or interests which are the subject of an administrative proceeding, then such "person" has standing to appeal under R.C. 119.12 an administrative decision if that person is also provided the opportunity by statute to assert those interests in an administrative hearing.

Id. at 518–519, 591 N.E.2d 415.

{¶ 35} Applying *Miami Univ.* to the facts of this case, Crosby lacks standing because she was not entitled to statutory notice of the administrative hearing before the board. See R.C. 4717.03(G) (the only person identified in the statute to whom the board must give notice is the license holder, and only the license holder is afforded the opportunity to request a hearing). Crosby relied upon *Miami Univ.* in her brief and cited R.C. 119.07[4] as entitling her to statutory notice of the hearing, but that reliance is misplaced. The notice requirements set forth in the first paragraph of R.C. 119.07 do not apply to statutes, such as R.C. 4717.03, which contain their own notice requirements and provide the opportunity for a hearing only upon request.

{¶ 36} As the owner of the funeral home, Crosby's proprietary interests are undeniable. Thus, it seems somewhat counterintuitive that Crosby would not have standing to appeal from a decision of the board that revoked the funeral home's license, given the adverse effect on her proprietary interests. The key distinction to be drawn here, however, is that Crosby's proprietary interests are not the same interests as those adjudicated by the board. While R.C. Chapter 4717 permits unlicensed persons to own a funeral home, it is clear that according to Ohio law, such persons do so at their own proprietary peril.

## B. The Funeral Home Has Standing

{¶ 37} We hold that the funeral home has standing to appeal under R.C. 119.12. The board properly notified the funeral home of the charges against it

---

4. The first paragraph of R.C. 119.07 begins: "Except when a statute prescribes a notice and the persons to whom it shall be given * * *." The last sentence provides, "This paragraph does not apply to situations in which such section provides for a hearing only when it is requested by the party."

when the board notified Edwards, the holder of its license. Indeed, Crosby's letter to the board dated July 11, 2005, evidences her knowledge of the charges against the funeral home, as well as the 30–day time limit within which to request a hearing. Yet neither Edwards nor Crosby requested a hearing on behalf of the funeral home. The funeral home was also properly noticed of the adjudicatory hearing by way of the board's letter to Jones, who at that time was the funeral home's licensed funeral director and the holder of its license.

{¶ 38} The fact that the funeral home failed to request a hearing does not mean that the court lacked jurisdiction over the appeal, but it does mean that the funeral home failed to exhaust its available administrative remedies. *Derakhshan v. State Med. Bd.*, Franklin App. No. 07AP–261, 2007-Ohio-5802, 2007 WL 3148684, ¶ 24. A party generally waives the right to appeal an issue that could have been but was not raised in earlier proceedings. *MacConnell v. Ohio Dept. of Commerce*, Franklin App. No. 04AP–433, 2005-Ohio-1960, 2005 WL 995590, ¶ 21; *Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, 869 N.E.2d 687, ¶ 47, citing *Tipton v. Woltz*, Summit App. No. 22722, 2005-Ohio-6989, 2005 WL 3557133, ¶ 8; *State Med. Bd. v. Fiorica* (Nov. 3, 1988), Franklin App. No. 88AP–516, 1988 WL 118820. Consequently, the funeral home has waived its right to appeal the issues identified in its notice of appeal filed with the common pleas court. Accordingly, we sustain the board's third and fourth assignments of error, albeit for different reasons than those advanced by the board.

{¶ 39} For all of the above reasons, this court concludes that Crosby lacks standing under R.C. 119.12 to appeal from a decision of the board and the funeral home failed to exhaust its administrative remedies. Based on the foregoing, we hold that the trial court erred in denying the board's motion to dismiss as it relates to Crosby and in remanding the matter to the board. Accordingly, we sustain the board's four assignments of error. The trial court's judgment is vacated and reversed, and the cause is remanded with instructions to dismiss the appeal brought by Crosby and affirm the board's order as it relates to the funeral home.

Judgment reversed
and cause remanded with instructions.

KLATT, J., concurs.

WHITESIDE, J., dissents.

WHITESIDE, J., retired, of the Tenth District Court of Appeals, sitting by assignment.

WHITESIDE, J., dissenting.

{¶ 40} Being unable to concur in the overruling of the assignments of error, I must respectfully dissent. The trial court correctly determined that Lisa Crosby–Edwards had standing to appeal pursuant to R.C. 119.12.

{¶ 41} R.C. 4717.06(A), in some convoluted language compounded by Ohio Adm.Code 4717–1–16, seems to provide that a licensed funeral director is the actual owner and operator of the funeral home, even though the funeral director may have no equity or financial interest in the operation. However, the statute also recognizes that the actual owner and operator of a funeral home may be a separate entity from the funeral director, and may even be a corporation.

{¶ 42} A cursory examination of the law reveals that the funeral director is an employee of the funeral home and the funeral home is required to have a licensed funeral director operating in that capacity at all times. The license itself appears to be issued in the name of the actual funeral home, but the board apparently considers the funeral director to be the actual licensee. The funeral home's license is not statutorily designated to be dependent upon the funeral director, but instead the funeral home must employ a licensed funeral director, by contract or otherwise, to act in that capacity in connection with funerals. Thus, the funeral home's license is effective only when a licensed funeral director has been employed to perform the functions of a funeral director. The funeral home's financial business and the ownership interest remains in the person or persons who actually own and operate the funeral home. As indicated in this case, all the business matters are conducted by the actual owner of the funeral home, not the licensed funeral director, whose license does not relate to conducting the business portion of the funeral home. This is especially true with respect to the matter that was the gravamen of the board's determination—the sale and execution of pre-need contracts by the funeral home, essentially a type of insurance.

{¶ 43} In this case, the "investigation" by the board was prompted by a complaint by another funeral home alleging that Crosby had not paid that funeral home the full amount of its funeral charges from the pre-need funds that the decedent had paid Crosby's funeral home. Thus, the complaint upon which the board relied had nothing to do with the conducting of funerals by the funeral home, but instead was entirely related to a business matter between Crosby and another funeral home. Nevertheless, the board found that neither Crosby nor the funeral home has standing to appeal pursuant to R.C. 119.12. Crosby, on the other hand, contended that she has standing to appeal because she has a pecuniary interest in the funeral home, which was actually the subject of the adjudication, and that that interest was prejudiced by the board's decision to revoke the license. The trial court determined that because "the revocation of the funeral home's license created an immediate and pecuniary result for Crosby,

[she] has standing to appeal the Board's decision," and it remanded the matter to the board for consideration of Crosby's contentions. It also found that the board had denied Crosby's due process rights and that the appeal was not moot.

{¶ 44} R.C. 119.12 provides that "any party adversely affected by any order of an agency issued pursuant to an adjudication * * * may appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident." R.C. 119.01(D) defines "adjudication" as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person." R.C. 119.01(F) defines "person" as "a person, firm, corporation, association, or partnership." Presumably, the reference to a "person" as part of the definition of person is intended to mean an individual. R.C. 119.01(G) defines "party" as "the person whose interests are the subject of an adjudication by an agency." Although the word "the" may be used as a definite article, it also may be used in its alternative meaning of "any." Also, in keeping with the rule of construction that words in the singular include the plural, and that words in the plural may include the singular, the use of the word "person" in R.C. 119.12(G) includes persons as well as just a single person.

{¶ 45} As the trial court found, the board's order adversely affected Crosby's interest as well as those of the funeral home. As the majority points out, words in a statute must be given their plain and ordinary meaning unless otherwise indicated by the contracts. Given the ordinary and customary meaning of the words in R.C. 119.12, there can be no doubt but that Crosby has standing as determined by the trial court. The majority states that standing is limited "to *only* those persons whose interests were adjudicated by an agency." (Emphasis sic.) However, those are not the words of the statute. The statute states that "[a]ny party adversely affected by any order of an agency issued pursuant to an adjudication * * * may appeal from the order of the agency to the court of common pleas * * *." In other words, the party must be adversely affected. The right to appeal is not limited to persons whose interests were adjudicated by the agency. There is nothing in either R.C. 4717.14 or R.C. Chapter 119 that limits appeals to a person who is issued a license. Rather, the right of appeal is afforded to every person whose legal rights are adversely affected by an adjudication by the agency.

{¶ 46} Assuming that Crosby does lack standing, it would necessarily follow that the board had no jurisdiction over her, and its order purporting to affect her ownership and pecuniary interest in the funeral home would be void for lack of jurisdiction by the board. There is nothing in R.C. 119.01(D) that limits the meaning of the word "person" to someone who is issued a license. Rather, R.C.

119.01(D) defines "adjudication" as being a determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person. Crosby is mentioned in the board's adjudication order and the board did determine her rights, essentially finding that she had none, and her interest was the subject of the adjudication even though the board refused to recognize her as having that interest. See R.C. 119.01(G). As stated by the majority, "as the owner of the funeral home, Crosby's proprietary interests are undeniable. It seems somewhat counterintuitive that Crosby would not have standing to appeal from a decision of the board that revoked the funeral home's license, given the adverse effect on her proprietary interest." The majority then states that Crosby's proprietary interests are not those adjudicated by the board. Unfortunately, this is incorrect. The proprietary interests adjudicated involved a contractual arrangement between Crosby and the funeral home and persons who wanted to prepare for their funeral before their death through a pre-need contract for funeral services. R.C. Chapter 4717 permits persons who are not funeral directors to own and operate a funeral home. The caveat is that they must hire a licensed funeral director to perform all the services necessary to be performed, including those required by law, to be performed by a licensed person in connection with a funeral.

{¶ 47} For the foregoing reasons, I believe that the trial court's decision was correct. Accordingly, I would overrule all four assignments of error of the board. Therefore, the judgment of the Franklin County Court of Common Pleas, from which this appeal is taken, should be affirmed, and this cause should be remanded to the trial court for execution and enforcement of that judgment.