BENNETT, Appellant,

v.

EVANGELICAL LUTHERAN CHURCH IN, AMERICA,
SOUTHERN OHIO SYNOD et al., Appellees.

[Cite as *Bennett v. Evangelical Lutheran Church in
Am., S. Ohio Synod* (1994), 97 Ohio App.3d 786.]

Court of Appeals of Ohio,
Franklin County.

No. 94APE05–635.

Decided Dec. 6, 1994.

*Spencer & Ehrie* and *Scott W. Spencer,* for appellant.

*Vorys, Sater, Seymour & Pease, Suzanne K. Richards* and *Susan M. Barrett,* for appellees.

BOWMAN, Judge.

Appellant, Michael L. Bennett, was ordained a minister in the predecessor to the Evangelical Lutheran Church of America ("ELCA"), appellee, in July 1974. In June 1991, appellant accepted a pastoral call by St. John's Evangelical Lutheran Church in Piqua, Ohio, and, pursuant to the call, entered into a written contract of employment without term.

In March 1992, appellant received a telephone call from Kenneth H. Sauer, Bishop of appellee, the Southern Ohio Synod of the ELCA, requesting a meeting with him. At that meeting, Sauer informed appellant that two individuals had made allegations that, while appellant was rendering pastoral counseling to them, he engaged in sexual misconduct. Appellant denied any such misconduct. On March 24, 1992, appellant met with Sauer again, at which time Sauer demanded that appellant resign his pastoral call; however, appellant refused. Appellant then contacted an attorney.

In April 1992, Sauer wrote appellant, indicating he would call an advisory panel as provided by Chapter 21.21.04 of the ELCA Constitution to review the allegations. A date was set for the advisory panel; however, Sauer refused to conduct the meeting if a court reporter remained. Thereafter, appellant received a letter from Sauer dated May 26, 1992, which stated:

"Through this letter, I am suspending you from service in St. John's Lutheran Church, Piqua. This action is taken without prejudice until the process of a disciplinary hearing is completed.

"I will very soon be filing written charges with the Secretary of the Evangelical Lutheran Church in America. When filed, they will set in motion a process which is described in Chapter 20 of the ELCA Constitution and Bylaws. * * *

"I continue to have a pastoral concern for you and your family, as well as the congregation. I also have a concern for the victims who have now filed police reports. In view of all of this, I have concluded that temporary suspension is the most responsible step to take at this time.

"You continue to have the option to resign at any time. To resign would avoid the disciplinary hearing, and more importantly, provide the opportunity for treatment and reassessment for ministry."

In July 1992, appellant received notice of appellees' intention to proceed with disciplinary charges against him for the purpose of dismissing appellant from its roster of ordained ministers. Also in July, two misdemeanor charges of sexual imposition, arising out of the allegations of sexual misconduct, were filed against appellant in the Miami County Municipal Court. Thereafter, appellant consulted and retained attorneys to represent him in the criminal action as well. On November 1, 1992, appellant resigned from the ELCA roster of ordained pastors, so, he alleges, as not to waive his procedural rights as set forth in the ELCA Constitution.

In February 1993, appellant received an invoice in the amount of $55,166.47 from his attorneys for interim professional services rendered in the disciplinary proceeding initiated by the ELCA and for representation in the criminal charges. Thereafter, appellant forwarded a copy of the interim bill to Sauer, requesting indemnification pursuant to Chapter 21 of the ELCA Constitution. By letter dated February 19, 1993, Sauer informed appellant that he had forwarded the material appellant sent him to the general counsel of the ELCA, who advised him "that indemnification is not appropriate under the circumstances of this past year." Sauer then directed appellant to contact ELCA counsel, David Hardy. On February 26, 1993, appellant's counsel wrote to Hardy, asking him to specify under what authority the ELCA determined that indemnification was not appropriate. Appellant has never received a reply from Hardy.

On May 13, 1993, appellant filed the instant action, pursuant to R.C. 2721.02, seeking a declaration that he is entitled to indemnification from appellees. On July 19, 1993, appellees filed a motion to dismiss appellant's cause of action, asserting that the court lacked subject matter jurisdiction over the action based on the First Amendment to the United States Constitution. Appellees also

asserted that appellant failed to state a claim upon which relief could be granted, because appellant was not a covered person within the meaning of the indemnification clause. Appellant filed a memorandum in opposition to appellees' motion to dismiss, to which appellees replied.

On April 5, 1994, the trial court determined that the case involved the interpretation of the ELCA Constitution, a religious document, and that it would be a violation of the First Amendment for the court to interpret it. As a result, the trial court granted appellees' motion to dismiss based on a lack of jurisdiction.[1] Appellant now brings this appeal, asserting the following assignment of error:

"The trial court erred in the dismissal of plaintiff's complaint, as the First Amendment does not prohibit civil courts from determining contractual disputes arising between churches and agents."

The First Amendment to the United States Constitution prohibits any inquiry by the courts into religious doctrine or practice and, thus, courts have no role in determining ecclesiastical questions in the process of resolving property disputes. *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church* (1969), 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658. See, also, *S. Ohio State Exec. Offices of Church of God v. Fairborn Church of God* (1989), 61 Ohio App.3d 526, 573 N.E.2d 172. Therefore, the First Amendment commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine. *Mary Elizabeth Blue Hull Mem. Presbyterian Church.* See, also, *Serbian Orthodox Church v. Kelemen* (1970), 21 Ohio St.2d 154, 50 O.O.2d 367, 256 N.E.2d 212, certiorari denied, *Kelemen v. Serbian Orthodox Church* (1970), 400 U.S. 827, 91 S.Ct. 54, 27 L.Ed.2d 57.

In *Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U.S. at 449, 89 S.Ct. at 606, 21 L.Ed.2d at 665, the court stated:

"[T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are *neutral principles of law*, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded. * * * " (Emphasis added.)

---

1. The trial court did not determine whether appellant stated a claim upon which relief could be granted.

At issue in this case is Chapter 21.01 of the ELCA Constitution, which provides:

"To the full extent permitted from time to time by law, each person who was or is a party or is threatened to be made a party to any threatened, pending or completed civil, criminal, administrative, arbitration, or investigative proceeding, including a proceeding by or in the right of this church, by reason of the fact that such person is or was a Church Council member, officer, employee, agent or member of any board, committee or commission of this church shall be indemnified against judgments, penalties, fines (including, without limitation, excise taxes assessed against the person with respect to an employee benefit plan), settlements, and reasonable expenses, including attorneys fees and disbursements, incurred by the person in connection with the proceeding. The indemnification provided by this section shall continue as to a person who has ceased to be a Church Council member, officer, employee, agent or member of a board, committee, or commission of this church and shall apply whether or not the claim against such person arises out of matters occurring before the adoption of this section."

Also at issue is Chapter †S16.01. of the Synod Constitution, which provides:

"To the full extent permitted from time to time by law, each person who was or is a party or is threatened to be made a party to any threatened, pending or completed civil, criminal, administrative, arbitration, or investigative proceeding, including a proceeding by or in the right of this church, by reason of the fact that such person is or was a Synod Council member, officer, employee, agent or member of any committee of this synod or other organizational unit created by this synod shall be indemnified against judgments, penalties, fines (including, without limitation, excise taxes assessed against the person with respect to an employee benefit plan), settlements, and reasonable expenses, including attorneys fees and disbursements, incurred by the person in connection with the proceeding. The indemnification provided by this section shall continue as to a person who has ceased to be a Synod Council member, officer, employee, agent or member of a committee of this synod and shall apply whether or not the claim against such person arises out of matters occurring before the adoption of this section."

If this court, or the trial court, were called on to decide whether these two provisions were valid, or if we were asked to decide the merits of the action taken by appellees against appellant, we would clearly be involved in the determination of ecclesiastical affairs of the church. See *Niemann v. Cooley* (1994), 93 Ohio App.3d 81, 637 N.E.2d 943. However, where the dispute involves nondoctrinal contractual disputes, a civil court retains jurisdiction to hear the dispute. *Tibbs v. Kendrick* (1994), 93 Ohio App.3d 35, 637 N.E.2d 397.

■ The indemnification clauses at issue in this case do not concern church doctrine, dogma or religious practice but, instead, pertain to the legal issue of whether or not appellant is entitled to indemnification for attorney fees he incurred in the administrative and criminal proceedings against him. Thus, the issue in the case at hand is secular in nature and one to which basic contractual, legal principles may be applied.

■ Simply because the litigants include religious bodies does not necessarily make all issues ecclesiastical in nature. See *Fairborn Church of God* and *Salzgaber v. First Christian Church* (1989), 65 Ohio App.3d 368, 583 N.E.2d 1361. The trial court erred in determining that it lacked subject matter jurisdiction to hear the case.

Based on the foregoing, appellant's assignment of error is sustained, the judgment of the trial court is reversed, and this cause of action is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WHITESIDE, P.J., and DESHLER, J., concur.