[Cite as *Tharp v. Hillcrest Baptist Church of Columbus*, 2022-Ohio-4695.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kevin Tharp, | : | |
| Plaintiff-Appellant, | : | No. 22AP-231 |
| | | (C.P.C. No. 21CV-1678) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Hillcrest Baptist Church of Columbus, Ohio et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on December 27, 2022

**On brief**: *Butler, Cincione & DiCuccio, N. Gerald DiCuccio*; *Katz, Pryor & DiCuccio, LLP*, and *Robert K. DiCuccio*, for appellant. **Argued**: *Robert K. DiCuccio*.

**On brief**: *Reminger Co., L.P.A.*, and *Melvin J. Davis*, for appellees. **Argued**: *Melvin J. Davis*.

APPEAL from the Franklin County Court of Common Pleas

McGRATH, J.

{¶ 1} This is an appeal by plaintiff-appellant, Kevin Tharp, from a decision and entry of the Franklin County Court of Common Pleas, entering judgment in favor of defendants-appellees Hillcrest Baptist Church of Columbus, Ohio (individually "Hillcrest Baptist" or "the church") and Timothy W. Lee (individually "Pastor Lee") after granting appellees' motion for summary judgment and partial motion for judgment on the pleadings.

{¶ 2} On August 22, 2018, appellant filed a complaint in Franklin C.P. No. 18CV-7172 naming as defendants Hillcrest Baptist, Pastor Lee, and Larry Roach. On July 31, 2020, appellant voluntarily dismissed that action.

{¶ 3} On March 17, 2021, appellant refiled a complaint against Hillcrest Baptist and Pastor Lee. On April 14, 2021, appellant filed an amended complaint, alleging causes of action for defamation, libel, slander, false-light invasion of privacy, invasion of privacy, breach of confidentiality, negligence, intentional infliction of emotional distress, clergy malpractice, declaratory judgment, breach of contract, and breach of fiduciary duties. On April 26, 2021, Hillcrest Baptist and Pastor Lee (collectively "appellees") filed a partial motion for judgment on the pleadings. On May 10, 2021, appellant filed a memorandum contra. On September 17, 2021, the trial court filed a decision and entry granting appellees' partial motion for judgment on the pleadings, thereby dismissing appellant's claims for declaratory judgment, breach of contract, and breach of fiduciary duties.

{¶ 4} On September 27, 2021, appellees filed a motion for summary judgment as to appellant's remaining claims. On October 25, 2021, appellant filed a memorandum in opposition. On April 4, 2022, the trial court filed a decision and entry granting appellees' motion for summary judgment.

{¶ 5} The following background facts are taken primarily from the decision of the trial court granting summary judgment in favor of appellees. According to the allegations in appellant's amended complaint, "on August 21, 2017, * * * Pastor Lee, a reverend with the Church, held a private conference where '[Pastor] Lee asked [appellant] about a past encounter that occurred with another Hillcrest Baptist Church congregant over thirty years ago.' " (Apr. 4, 2022 Decision at 3.) The meeting was prompted because a current attendee of the church, "now an adult, had recently recognized [appellant] as the man that sexually molested him when he was fifteen years old." Although appellant's complaint "blandly describes this sexual abuse as 'a past encounter,' [appellant] admitted in discovery to a pattern of sexually abusing young boys." (Apr. 4, 2022 Decision at 3-4.)

{¶ 6} During his deposition testimony, appellant "admitted having previously molested the then-teen." Specifically, appellant testified he touched this individual in the "[g]roin area," and acknowledged that he touched this individual's penis. According to appellant's deposition, this was not "the only minor that [appellant] abused." (Apr. 4, 2022 Decision at 4.)

{¶ 7} In its summary judgment decision, the trial court cited the following portion of appellant's deposition testimony:

Q. How many minors did you touch?

A. You'll have to ask that a different way.

Q. No, I don't think I do.

A. I can't answer that then.

Q. Do you know how many minors you touched in the groin area?

A. I know, yes.

Q. All right. Then I'm asking you to tell me.

A. Four knew it.

Q. There were some you touched while they were asleep?

A. Yes.

Q. How many did you touch while they were asleep?

A. I don't remember. I don't remember.

Q. Was it more than five?

A. I don't remember.

(Apr. 4, 2022 Decision at 4, quoting Appellant's Depo. at 19-20.)

**{¶ 8}** The trial court found appellant's "description of this abuse was both candid and unapologetic." (Apr. 4, 2022 Decision at 4.) In response to an inquiry as to why he waited until the individuals were asleep to touch them, appellant responded: "It's the only way I could risk it without being rejected. I had very low self-esteem." (Apr. 4, 2022 Decision at 4, quoting Appellant's Depo. at 26.)

**{¶ 9}** The trial court found that "[d]espite admitting to sexually abusing minors while they slept," appellant "took exception to characterizing that conduct as molestation." When asked during his deposition if he considered his conduct "to be molestation," appellant responded "[n]o," stating there was "no sexual intent." Appellant characterized his intent as "[s]howing affection." (Apr. 4, 2022 Decision at 5, quoting Appellant's Depo. at 23.) When asked why he touched the groin area, appellant stated: "Most pleasurable part

for a person of the male species." (Apr. 4, 2022 Decision at 5, quoting Appellant's Depo. at 24.)

{¶ 10} After confronting appellant "with this history, Pastor Lee held an emergency meeting at the Church to discuss [appellant's] admitted history of sexual abuse." During that meeting, "Pastor Lee informed the congregation that he'd consulted with professionals at Netcare, who opined in turn that [appellant] had an incurable disease, and that his conduct at the Church amounted to grooming children." (Apr. 4, 2022 Decision at 5.)

{¶ 11} In its summary judgment decision, the trial court also cited the following portion of the deposition testimony of Marc Cooper, a member of Hillcrest Baptist:

Q. Did [Pastor Lee] ever say that [appellant] had an incurable disease?

A. He did not say that. He said that he had talked to professionals that said that it was an incurable disease.

* * *

Q. Did he say that [appellant] was grooming children? And when I say "grooming," do you know what I mean?

A. (Indicates affirmatively.)

Q. Did he say that?

A. Again, he said professionals told him that that's what [appellant] was doing.

(Apr. 4, 2022 Decision at 5, quoting Cooper Depo. at 21.)

{¶ 12} In granting appellees' partial motion for judgment on the pleadings, the trial court determined it lacked subject-matter jurisdiction, under the ecclesiastical abstention doctrine, over appellant's claims for declaratory judgment, breach of contract, and breach of fiduciary duty. In its summary judgment decision, the trial court determined appellees were entitled to summary judgment on the remaining claims on the grounds: (1) truth is an absolute defense to the claims, (2) the statements at issue constituted statements of opinion, and (3) Pastor Lee had a qualified privilege to protect members of the congregation.

{¶ 13} On appeal, appellant sets forth the following two assignments of error for this court's review:

> I. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS.
>
> II. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS PLAINTIFF PRESENTED GENUINE ISSUES OF MATERIAL FACT NECESSITATING TRIAL.

{¶ 14} Under his first assignment of error, appellant asserts the trial court erred in granting appellees' partial motion for judgment on the pleadings. Specifically, appellant argues the trial court erred in granting the motion based on the ecclesiastical abstention doctrine.

{¶ 15} An appeal of a decision "granting a motion for judgment on the pleadings under Civ.R. 12(C) raises only questions of law," and "the standard for appellate review is de novo." *Lytal v. Crawl for Cancer, Inc.*, 10th Dist. No. 17AP-771, 2018-Ohio-2017, ¶ 7. Civ.R. 12(C) permits "any party to move for judgment on the pleadings after the time for pleading has closed." *Id.* at ¶ 8. Dismissal under Civ.R. 12(C) " 'is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.' " *Id.*, citing *Lin v. Gatehouse Constr. Co.*, 84 Ohio App.3d 96, 99 (8th Dist.1992).

{¶ 16} As noted, the trial court determined it lacked subject-matter jurisdiction over several of appellant's claims based on the ecclesiastical abstention doctrine. Insofar as the trial court determined "it did not have jurisdiction of claims that involved purely ecclesiastical matters, our review is also de novo." *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 10, citing *Crosby-Edwards v. Ohio Bd. of Embalmers & Funeral Dirs.*, 175 Ohio App.3d 213, 2008-Ohio-762, ¶ 21 (10th Dist.). Further, "when a trial court determines its subject-matter jurisdiction, it is not confined to the allegations of the complaint and it may consider any pertinent evidentiary materials in ruling upon a motion to dismiss." *Id.*, citing *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 110 (1990); *Southgate Dev. Corp. v. Columbia Gas Transmission Corp.*, 48 Ohio St.2d 211 (1976).

{¶ 17} It is well-settled that " 'civil courts lack jurisdiction to hear or determine purely ecclesiastical or spiritual disputes of a church or religious organization,' " otherwise " 'known as the ecclesiastical abstention doctrine.' " *Mt. Pilgrim Baptist Church*, *Inc. v. Bishop*, 6th Dist. No. L-14-1206, 2015-Ohio-5161, ¶ 36, quoting *Tibbs v. Kendrick*, 93 Ohio App.3d 35, 41 (8th Dist.1994). This principle reflects the recognition that " '[a]ll who unite themselves to such a body [* * * i.e. the church] do so with an implied consent to [its] government, and are bound to submit to it. * * * It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.' " *Plough v. Lavelle*, 170 Ohio App.3d 720, 2006-Ohio-6200, ¶ 16 (11th Dist.), quoting *Watson v. Jones*, 80 U.S. 679, 729 (1871).

{¶ 18} Ohio appellate courts, in summarizing principles derived from "a long line of United States Supreme Court precedent dating back to 1871, have articulated the ecclesiastical abstention doctrine as a two-part test used to determine whether a court has subject matter jurisdiction over a church dispute." *Mt. Pilgrim Baptist Church* at ¶ 37. Under "the first step, courts must determine whether the organization is hierarchical or congregational." *Id.*, citing *Bhatti v. Singh*, 148 Ohio App.3d 386, 2002-Ohio-3348, ¶ 25 (12th Dist.). In this respect, " '[a] hierarchical polity exists when "the religious congregation * * * is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." ' " *Id.*, quoting *State ex rel. Morrow v. Hill*, 51 Ohio St.2d 74, 76 (1977), quoting *Watson* at 722-23. On the other hand, "a congregational polity exists where a religious congregation 'is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority.' " *Id.*, quoting *Watson* at 722.

{¶ 19} If an organization "is congregational, then the court determines whether the dispute is ecclesiastical or secular in nature." *Id.*, citing *Tibbs* at 43. A court "maintains jurisdiction over secular issues." *Id.*, citing *Tibbs* at 42.

{¶ 20} In addressing appellees' partial motion for judgment on the pleadings, the trial court cited allegations in appellant's amended complaint indicating that appellant and

Pastor Lee, on August 21, 2017, "held a private conference where '[Pastor] Lee asked [appellant] about a past encounter that occurred with another Hillcrest Baptist Church congregant over thirty years ago" after "[t]he church attendee had recently recognized [appellant] as the man who had sexually molested him as a teenager." (Sept. 17, 2021 Decision at 1-2.) Appellant "acknowledged sexually molesting the attendee when the attendee was a minor—and, indeed, admits the same to this Court." (Sept. 17, 2021 Decision at 2.)

{¶ 21} On August 24, 2017, Pastor Lee conducted "a meeting at the church to discuss [appellant's] admitted prior history. * * * On October 12, 2017, the Hillcrest Board of Trustees, referred to as the 'Vision Team' at Hillcrest * * * convened a meeting and voted to remove [appellant] from church leadership and church membership." (Sept. 17, 2021 Decision at 2.) The trial court, based on the allegations presented, granted appellees' partial motion for judgment on the pleadings and dismissed appellant's claims for declaratory judgment, breach of contract, and breach of fiduciary duties on the basis that it lacked subject-matter jurisdiction over those claims pursuant to the ecclesiastical abstention doctrine.

{¶ 22} In opposing appellees' partial motion for judgment on the pleadings, appellant asserted the church bylaws required notice of a special business meeting, and that the August 24, 2017 meeting in which Pastor Lee informed the church body of appellant's past conduct with a youth was improperly conducted. Appellant thus sought a declaratory judgment based on the purported failure of appellees to follow their internal bylaws in revoking appellant's leadership positions and membership in the church.

{¶ 23} The trial court held, however, "[w]hether the Church acted arbitrarily and capriciously in de-selecting [appellant's] membership and leadership * * * are fundamentally non-justiciable questions pursuant to the ecclesiastical abstention doctrine." (Sept. 17, 2021 Decision at 4.) In reaching that determination, the trial court cited and discussed various provisions of the Hillcrest Baptist bylaws. Specifically, citing Article II, Section 2 of the bylaws, providing in part that "[a]ll Officers, Vision Team members, and Committee members shall be active <u>members</u> of Hillcrest Baptist Church <u>in good standing and not novice Christians</u>," the trial court observed "the Bylaws * * * expressly provide that eligibility to serve in Leadership is contingent on both Church membership and adherence to Christian principles." (Emphasis sic.) (Sept. 17, 2021

Decision at 5.)  The court noted that, under Article VI, Section 2 of the church's constitution, "Leadership's duties include 'the administration of the church and <u>the endeavors to fulfill the policies and procedures of the scripture</u> and of the church as outlined in the constitution.' " (Emphasis sic.) (Sept. 17, 2021 Decision at 5.)  The court further noted that "[c]hurch membership, in turn, is governed by Article IV, Section 2 [of the constitution], providing that: 'Members are expected to live daily <u>in a Christian manner as explained in the scriptures</u>,' " and that "[u]ltimately, Article III, Section 3 states that: 'This Church accepts the <u>Holy Scriptures</u> as its authority and guide <u>in all matters</u> pertaining to our belief, faith, <u>and daily walk of life</u>.' "  (Emphasis sic.)  (Sept. 17, 2021 Decision at 5.)  Finally, the trial court observed that, pursuant to Article IV, Section 3, church membership "could be terminated upon approval of the Vision Team * * * '[b]y erasure or exclusion because of <u>grossly immoral and non-Christian conduct</u>.' " (Emphasis sic.) (Sept. 17, 2021 Decision at 5.)

{¶ 24}  In analyzing those internal documents of Hillcrest Baptist, the trial court held in pertinent part:

> Simply put, for the Church, internal questions of membership, leadership, and governance are inextricably linked to their theology.
>
> Under those circumstances, the Court is unable to adjudicate the presence or absence of circumstances so irreconcilable with articles of faith as might necessitate procedural deviation from ordinary decision-making per the internal bylaws. Nor is the Court able to assess ultimate substantive ecclesiastical questions regarding membership and participation. Simply put, lacking any ability to adjudicate who can be a Church member or Church leader, and being unable to measure what theological weight to be given to particular faith infractions as might require deviance from the ordinary course, the Court is unable to assert subject matter jurisdiction over these causes of action. And, indeed, that sort of jurisprudential-theological impasse is the primary reason for the ecclesiastical abstention doctrine in the first place.

(Sept. 17, 2021 Decision at 5-6.)

{¶ 25}  On appeal, appellant argues he "narrowly contends" that: (1) appellees failed to provide notice of a special business meeting conducted on or about August 24, 2017, (2) appellees prevented appellant from attending a "Board of Trustees meeting on

October 12, 2017," during which appellant was "removed from his position on the Board of Trustees without the opportunity to defend himself," and (3) during the meeting on October 12, 2017, a voting member of each team was not present, and an individual was permitted to cast a vote for appellant's removal in contravention of Hillcrest Baptist's constitution and bylaws. (Appellant's Brief at 13.)

{¶ 26} We note, at the outset, the parties in this case do not dispute that Hillcrest Baptist is a congregational organization. In such circumstances, "this court must * * * determine if the issues involve ecclesiastical or secular issues." *Jones v. Wilson*, 8th Dist. No. 88890, 2007-Ohio-6484, ¶ 21. In this respect, "[c]ourts are * * * permitted to hear controversies that are purely secular and require no inquiry into ecclesiastical matters." *State ex rel. First New Shiloh Baptist Church v. Meagher*, 1st Dist. No. C-960371 (Apr. 16, 1997). Generally, courts may consider church disputes such as those in which "[t]he sole issue concerns the ownership of real property." *S. Ohio State Executive Offices of Church of God v. Fairborn Church of God*, 61 Ohio App.3d 526, 537 (2d Dist.1989). *See also Jones* at ¶ 21 ("Where a dispute involves non-doctrinal contractual disputes, a civil court retains jurisdiction."). However, if a court "has to inquire into church doctrine, and go beyond completely neutral principles, then the court does not have jurisdiction to hear the dispute." *Id.*, citing *Salzgaber v. First Christian Church*, 65 Ohio App.3d 368, 372 (4th Dist.1989).

{¶ 27} Accordingly, "courts have no role in determining ecclesiastical questions in the process of resolving property disputes," and therefore "the First Amendment commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine." *Bennett v. Evangelical Lutheran Church in Am., S. Ohio SNYOD*, 97 Ohio App.3d 786, 789 (10th Dist.1994). *See also Turner v. Tri-Cty. Baptist Church of Cincinnati*, 12th Dist. No. CA2018-03-050, 2018-Ohio-4658, ¶ 16, quoting *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir.1986) (noting "the 'neutral principles' exception to the ecclesiastical abstention doctrine' applies only to cases involving disputes over church property' * * * [and the doctrine] 'has never been extended to religious controversies in the areas of church government, order and discipline, nor should it be' "). Thus, matters involving "[c]hurch discipline, ecclesiastical government, or 'the conformity of the members of the church to the standard of morals required of them' is beyond the scope of review by a secular tribunal." *Howard v. Covenant Apostolic Church, Inc.*, 124 Ohio App.3d 24, 28-29 (1st Dist.1997), quoting *Watson* at 728-29.

{¶ 28} In cases requiring inquiry as to whether a pastor "had been engaged in wrongdoing," and "the heart of the inquiry would be whether or not the pastor should be removed," such considerations implicate "an ecclesiastical issue" for which a trial court lacks subject-matter jurisdiction. *Robinson v. Freedom Faith Missionary Baptist Church*, 2d Dist. No. 20232, 2004-Ohio-2607, ¶ 28. *See also Meagher* (an inquiry into church finances to determine whether a pastor "engaged in wrongdoing, rendering him unqualified as a pastor, and whether he should be removed for misconduct," would require "[d]elving into the need or reason for disciplinary action," necessarily requiring a court to "review ecclesiastical matters"). Similarly, Ohio courts have held "congregational * * * churches are free from secular court scrutiny of their internal practices and discipline regarding the membership of the congregation." *Howard* at 28, citing *First Baptist Church of Glen Este v. State*, 591 F.Supp. 676 (S.D.Ohio 1983); *Alexander v. Shiloh Baptist Church*, 62 Ohio Misc.2d 79 (1991).

{¶ 29} In asserting the trial court erred in holding it lacked subject-matter jurisdiction over his claims for declaratory judgment, breach of contract, and breach of fiduciary duty, appellant characterizes the underlying dispute as simply a secular one between a corporate member of a board and the corporation, and "merely contends" appellees failed to follow their own constitution and bylaws. (Appellant's Brief at 17.)

{¶ 30} Appellant's argument, however, ignores the broader issue (recognized by the trial court) that the underlying dispute involves appellant's removal from church membership based on disciplinary action taken by the church after appellant "acknowledged sexually molesting" a current church attendee when "the attendee was a minor." (Sept. 17, 2021 Decision at 2.) In support of its decision, the trial court relied in part on *Adkison v. Williams*, 5th Dist. No. 18 CA 119, 2019-Ohio-4289, a decision we also find instructive.

{¶ 31} Under the facts of *Adkison,* the appellants, 31 current or former members of a church, alleged they were "notified by leaders of the congregation that they were no longer considered church members, and that these decisions were not made in accordance with the congregational by-laws." *Id.* at ¶ 3. The appellants brought causes of action for declaratory judgment, breach of fiduciary duty, breach of contract, and intentional infliction of emotional distress. The appellees, which included the church, the church pastor, and several trustees, filed a motion to dismiss for lack of subject-matter jurisdiction

pursuant to Civ.R. 12(B)(1). The trial court granted the motion based on lack of subject-matter jurisdiction.

{¶ 32} On appeal, the appellants argued the trial court "erroneously applied the ecclesiastical abstention doctrine to the question before it of appellants' church membership removal." *Id.* at ¶ 19. The court in *Adkison* rejected that argument, holding in part:

> [A]s much as appellants in this instance seek to couch this dispute as a straightforward question regarding the bylaws on congregational voting, we are persuaded upon review that this dispute presents a question of internal church governance. In particular, we observe additional provisions under the Mount Calvary Baptist Church bylaws require that the final step regarding dismissal of membership for conduct reasons is to have the deacon board "take it to the church," according to Chapter 18, verses 15-17 of the Gospel of Matthew in the New Testament. * * * This type of scriptural interpretation is clearly outside of the ambit of a court of law pursuant to the requirements of the First Amendment. * * * Thus, under the circumstances before us in this matter, we hold the question of whether appellants were wrongfully dismissed from membership according to the written procedural mechanisms of the church bylaws involved an ecclesiastical question that the trial court, under Civ.R. 12(B)(1), correctly abstained from resolving.

*Id.* at ¶ 21.

{¶ 33} In *Howard*, a case also involving a church membership dispute, the plaintiff brought an action against the defendants (a church and several of its church officers) alleging he was "wrongfully disfellowed" from membership in the church during a meeting he was not permitted to attend. *Howard* at 28. The plaintiff in that case argued, similar to appellant in the instant case, that because the church is "a non-profit corporation organized under Ohio law," it "is therefore governed by the rules and regulations of the statute requiring the corporation's adherence to its constitution and by-laws" and that, "as a member of the Church, he has a right to sue to require the corporation to follow its by-laws." *Id.* at 30. The court in *Howard* rejected the appellant's argument that "the trial court had jurisdiction to determine whether his expulsion from membership was undertaken in accordance with the Church's by-laws and procedures." *Id.* at 29. In reaching that

determination, the court observed that "membership in the Church is not the same as membership or trusteeship in the corporation." *Id.* at 30.

{¶ 34} In the present case, as outlined by the trial court in its decision granting appellees' partial motion for judgment on the pleadings, membership requirements are set forth in the church's bylaws and constitution. Article III, Section 3 of the constitution provides in part that the church "accepts the Holy Scriptures as its authority and guide in all matters pertaining to our belief, faith, and daily walk in life." Article IV, Section 2 of the constitution addresses church membership, with corresponding sections pertaining to qualifications, duties, and termination. With respect to duties, members "are expected to live daily in a Christian manner as explained in the scriptures, to attend teaching and worship services regularly and to be good stewards of their time and wealth as God has prospered them." Upon "approval of the Vision Team, church membership can be terminated in one of the four" specified methods, including "[b]y erasure or exclusion because of grossly immoral and non-Christian conduct." (Article IV, Section 3 of the Hillcrest Baptist Constitution.) Article VI, Section 2 of the constitution provides in part that the Vision Team "is accountable to the Church body and is totally responsible for the administration of the church and the endeavors to fulfill the policies and procedures of the scripture and of the church as outlined in the constitution." Article II, Section 2 of the bylaws provides: "All Officers, Vision Team members, and Committee members shall be active members of Hillcrest Baptist Church in good standing and not novice Christians."

{¶ 35} Following the vote by the Hillcrest Baptist Vision Team to remove appellant from membership, the Vision Team sent a letter to appellant outlining the basis for his removal from membership. The reasons listed included: (1) "[p]urposely not telling us of past abusive actions so that no restrictions would be on him from working and building relationships with kids," (2) "[s]howing little signs of a repentant and broken spirit over past actions where kid's lives were hurt and damaged through his abusive actions and showing lack of regard to the feelings of those same victims today," and (3) "[n]ot living up to the Hillcrest Covenant Agreement to protect the witness and reputation of Christ and His church here at Hillcrest." (Wright and Cooper Depos., Ex. 5.)

{¶ 36} As noted, matters of "[c]hurch discipline, ecclesiastical government, or 'the conformity of the members of the church to the standard of morals required of them' is beyond the scope of review by a secular tribunal." *Howard* at 28-29, citing *Watson* at 28-

29.  Stated otherwise, "secular courts will not inquire into whether disfellowship or expulsion from church membership was in accordance with church by-laws or regulations." *Id.* at 29.

{¶ 37}  Upon review, we find no error with the trial court's determination that, based on the allegations presented, it was "unable to adjudicate the presence or absence of circumstances so irreconcilable with articles of faith as might necessitate procedural deviation from ordinary decision-making per the internal bylaws," nor would it be able, under neutral principles of law, to "assess ultimate substantive ecclesiastical questions regarding membership and participation."  As recognized by the trial court, the instant dispute, involving questions as to the propriety of church discipline and the "theological weight to be given to particular faith infractions," would necessarily require the review of ecclesiastical matters over which the court lacked subject-matter jurisdiction.  (Sept. 17, 2021 Decision at 5.)

{¶ 38}  Accordingly, based on this court's de novo review, the trial court did not err in holding it lacked subject-matter jurisdiction over appellant's claims for declaratory judgment, breach of contract, and breach of fiduciary duty.  Appellant's first assignment of error is not well-taken and is overruled.

{¶ 39}  Under his second assignment of error, appellant asserts the trial court erred in granting summary judgment in favor of appellees as to his remaining claims for defamation, invasion of privacy, breach of confidentiality, negligence, intentional infliction of emotional distress, and clergy malpractice.

{¶ 40}  In accordance with the provisions of Civ.R. 56(C), a trial court shall grant summary judgment if the filings in the action, including the pleadings and affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.  This court's review of a trial court's decision on summary judgment is "de novo." *Id.*

{¶ 41}  Appellant first contends he presented the trial court with genuine issues of material fact as to his claim for defamation.  In support, appellant argues Cooper, a 40-year member of Hillcrest Baptist, provided deposition testimony that, during the church meeting on August 24, 2017, Pastor Lee related he had spoken with unnamed professionals who indicated appellant had an "incurable disease," and that these professionals told him

appellant was "grooming children." (Appellant's Brief at 32.) Appellant maintains these statements are false, and that there is no evidence he has an incurable disease.

{¶ 42} Appellant's amended complaint included claims for defamation, libel, slander, and false-light invasion of privacy. Because those claims are interrelated, we will consider them together. In general, "[d]efamation, which includes both slander and libel, is the publication of a false statement ' "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." ' " *Savoy v. Univ. of Akron*, 10th Dist. No. 13AP-696, 2014-Ohio-3043, ¶ 17, quoting *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). The term " '[s]lander' refers to spoken defamatory words, while 'libel' refers to written or printed defamatory words." *Id.*, citing *Matikas v. Univ. of Dayton*, 152 Ohio App.3d 514, 2003-Ohio-1852, ¶ 27 (2d Dist.).

{¶ 43} In order to "prevail on a defamation claim, whether libel or slander, a plaintiff must prove the following elements: (1) a false statement, (2) about the plaintiff, (3) was published without privilege to a third party, (4) with fault or at least negligence on the part of the defendant, and (5) the statement was either defamatory per se or caused special harm to the plaintiff." *Id.* at ¶ 18, citing *Schmidt v. Northcoast Behavioral Healthcare*, 10th Dist. No. 10AP-565, 2011-Ohio-777, ¶ 8, citing *McPeek v. Leetonia Italian-Am. Club*, 174 Ohio App.3d 380, 2007-Ohio-7218, ¶ 8 (7th Dist.). Under Ohio law, "[s]ubstantial truth is a complete defense to defamation." *Dudee v. Philpot*, 1st Dist. No. C-180280, 2019-Ohio-3939, ¶ 11. Further, "[e]xpressions of opinion are generally protected under Ohio law." *Byrne v. Univ. Hosps.*, 8th Dist. No. 95971, 2011-Ohio-4110, ¶ 12.

{¶ 44} Although "related, false light and defamation are different causes of action." *Dudee* at ¶ 82. A claim for false-light invasion of privacy occurs when "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, syllabus.

{¶ 45} The primary distinction between defamation and false-light is "the information at issue must be 'publicized' which is different than 'published.' " *Dickinson v. Spieldenner*, 6th Dist. No. L-16-1041, 2017-Ohio-667, ¶ 29, quoting *Welling* at ¶ 52. Stated otherwise, "the information is disseminated to 'the public at large, or to so many persons that the matter must be substantially certain to become public knowledge.' " *Id.*, quoting *Welling* at ¶ 53. Further, "false-light invasion of privacy defendants are afforded at least as much protection as defamation defendants." *Id.* at ¶ 30. Accordingly, "the defense of qualified privilege may apply," and "the same reasons that necessitate the dismissal of a defamation claim may support the dismissal of a false-light claim." *Id.*

{¶ 46} Under Ohio law, "[t]he elements of qualified privilege are: '[A] defendant must establish that (1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties.' " *Janiszewski v. Belmont Career Ctr.*, 7th Dist. No. 16 BE 0009, 2017-Ohio-855, ¶ 85, quoting *Mosley v. Evans*, 90 Ohio App.3d 633, 636 (11th Dist.1993). Further, "[a] qualified privilege may be defeated only by clear and convincing evidence of actual malice on the part of the defendant." *Id.* at ¶ 86, citing *Jacobs v. Frank*, 60 Ohio St.3d 111, 114-15 (1991).

{¶ 47} In *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 354-55 (6th Dist.1992), the court discussed, in the context of a defamation action, the defense of qualified privilege, holding in relevant part:

> Even in cases where a plaintiff has established a prima facie case of defamation, a defendant may invoke the defense of qualified privilege. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243 * * *. A publication is privileged when it is " 'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.' " As stated by the *Hahn* court, a publication is:

> "* * * conditionally or qualified privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith

proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits."

(Citations omitted.)

{¶ 48} In the present case, the relevant and largely undisputed facts as set forth in the trial court's summary judgment decision (and outlined above) indicate appellant and Pastor Lee held a private conference on August 21, 2017, at which time Pastor Lee questioned appellant about " 'a past encounter that occurred with another Hillcrest Baptist Church congregant over thirty years ago.' " The church attendee, "now an adult, had recently recognized [appellant] as the man that sexually molested him when he was fifteen years old." (Apr. 4, 2022 Decision at 3.) Appellant "admitted in discovery to a pattern of sexually abusing young boys," and he "admitted having previously molested the then-teen" congregant. Appellant also acknowledged in his deposition that this congregant was not "the only minor" he had touched inappropriately. (Apr. 4, 2022 Decision at 4.) Despite acknowledging his conduct with "minors while they slept," appellant "took exception to characterizing that conduct as molestation." (Apr. 4, 2022 Decision at 5.)

{¶ 49} After confronting appellant as to this history, "Pastor Lee held an emergency meeting at the Church to discuss [appellant's] admitted history of sexual abuse." Pastor Lee informed members of the congregation "that he'd consulted with professionals at Netcare, who opined in turn that [appellant] had an incurable disease, and that his conduct at the Church amounted to grooming children." (Apr. 4, 2022 Decision at 5.)

{¶ 50} The trial court found, even assuming appellant could demonstrate the statements at issue were defamatory, they were made pursuant to a qualified privilege. In

finding that appellees were protected by a qualified privilege, the trial court noted the summary judgment evidence indicated that "Pastor Lee, as the leader of his congregation, brought [appellant's] admissions to Church Leadership and the parents of children who had interactions with [appellant]." The trial court held in part: "Clearly, Pastor Lee had a duty to make this disclosure in order to protect the members of his congregation. This is especially true given the fact that the individual who recognized [appellant] was concerned that [appellant] was engaging in the same grooming behaviors with the children of the congregation that he had experienced when he was a teenager." The trial court further found "Pastor Lee did not share [appellant's] prior misconduct of abusing children beyond those who had a legitimate interest in knowing." Finally, the trial court addressed the issue of malice, finding "there is no record evidence that Pastor Lee's statements were made with either knowledge that the statements were false or reckless disregard as to their truth or falsity." (Apr. 4, 2022 Decision at 10.)

{¶ 51} Ohio courts have considered the issue of a qualified privilege defense to a defamation claim in instances where parties share a common interest in the well-being of minors. *See McCartney* at 356 (qualified privilege existed as a matter of law with respect to school principal's statements to parents of students who had been interacting with the plaintiff-teacher that the plaintiff had been convicted of "corrupting a minor" because, "[a]s a matter of public policy, educators and parents share a common interest in the training, morality and well-being of the children in their care" and, as a result of this shared interest, a relationship exists "in which a right, and in many instances a duty, to communicate information * * * arises"). Ohio courts have also recognized the existence of a qualified privilege as to "church interests." *See Mosley* at 637 (church deacons entitled to defense of qualified privilege regarding letter distributed to church congregation concerning "various church interests" and expressing deacons' belief that reverend's health problems prevented him from performing his duties effectively); *Austin v. Peterson*, 9th Dist. No. 2735-M (Jan. 13, 1999), citing *Baker v. Spinning Rd. Baptist Church, Inc.*, 2d Dist. No. 17052 (Sept. 11, 1988) ("church members have an interest in the actions taken by a board concerning an employee of the church").[1]

---

[1] Restatement of the Law, Torts, § 596, comment d, states in part: "The common interest of members of religious, fraternal, charitable or other non-profit associations, whether incorporated or unincorporated, is recognized as sufficient to support a privilege for communications among themselves concerning the

{¶ 52} Courts in other jurisdictions "have recognized a qualified privilege for communications made in the context of church discipline." *Marks v. Estate of Hartgerink,* 528 N.W.2d 539, 546 (Iowa 1995) (holding it "appropriate to apply a qualified privilege to statements made in the context of a church disciplinary proceeding"); *Cargill v. Greater Salem Baptist Church,* 215 S.W.3d 63, 68 (Ky.App.2006) (applying qualified privilege to alleged defamatory statements made by church disciplinary committee "in the course of a church disciplinary matter"); *Dillavou v. Schaffner,* Minn. App. No. C7-94-362 (July 19, 1994) (even if statements were defamatory, qualified privilege covered statements made by members of church to fellow members at church meetings regarding parishioner's expulsion from church as such statements pertained to "matters of legitimate common interest to the church congregation" and therefore defendants "had a qualified privilege to publish them among themselves").

{¶ 53} It is well-settled that "[t]he purpose of a qualified privilege is to protect speakers in circumstances where there is a need for full and unrestricted communication concerning a matter in which the parties have an interest or duty." *Austin.* Stated otherwise, "whether the interest to be upheld is sufficient depends on whether the speaker and the listener possess a common interest in the communication." *Id.* Further, "[w]here the circumstances of the occasion for the alleged defamatory communication are not in dispute, the determination of whether there is a qualified privilege is a question of law for the trial court." *McCartney* at 355.

{¶ 54} Upon review, we find no error with the trial court's determination that "Pastor Lee had a duty to make this disclosure in order to protect the members of his congregation" (i.e., that the statements at issue were protected as communications in which the speaker had an interest in the subject matter and a duty to convey to the recipients sharing a common interest in the communications). (Apr. 4, 2022 Decision at 10.) *See, e.g., Terry v. Davis Community Church,* 131 Cal.App.4th 1534, 1547 (2005) (qualified privilege attached to allegedly defamatory statements regarding child molestation during investigation prompted by parents of a church youth group where statements occurred in context of ongoing discussion about protection of children at church).

---

qualifications of the officers and members and their participation in the activities of the society. This is true whether the defamatory matter relates to alleged misconduct of some other member which makes him undesirable for continued membership, or the conduct of a prospective member."

{¶ 55} The undisputed facts indicate that appellant, who was involved in youth ministry at the church and was required to undergo a background check to serve in that ministry, had not disclosed past conduct until confronted by Pastor Lee (and only after a current congregant revealed a past incident of abuse). The alleged defamatory statements were made in the context of church proceedings involving the church's Vision Team and parents of teens who may have had interactions with appellant. During the meeting, Pastor Lee informed "the parents of [appellant's] past actions so that we could see if there was any abuse that had taken place with kids of our community." (Lee Depo. at 40.) According to Pastor Lee, "[o]nce I learned of his past actions, I was concerned that it could have happened." (Lee Depo. at 41.) Here, the summary judgment evidence fails to demonstrate a genuine issue of material fact as to whether the statements at issue were made in good faith, with a legitimate church interest to be upheld, limited in scope and made in a proper manner to the proper parties. Based on this court's de novo review, we agree with the trial court that, as a matter of law, the alleged defamatory statements, involving communications between appellees and members of the congregation sharing a common interest, were protected by a qualified privilege.

{¶ 56} Further, we agree with the trial court that the evidence on summary judgment did not create a genuine issue of material fact as to whether appellees acted with malice. Under Ohio law, where a defendant has a qualified privilege regarding statements, "that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice." *Byvank v. Fidelity Orthopedic, Inc.*, 2d Dist. No. 17465 (May 28, 1999). In such a "qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard to their truth or falsity." *Id.*

{¶ 57} However, "[i]t is not enough to prove the falsity of the statement, but a plaintiff 'must prove with convincing clarity that defendant was aware of the high probability of falsity.' " *Id.* Thus, "[t]o establish that the statements were made with 'reckless disregard,' sufficient evidence must be presented by the plaintiff to lead a court to find that the defendant had 'serious doubts' as to the truth of the publication." *Id.* In this respect, "[a] court is likely to find reckless disregard 'where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.' " *Id.*, quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Further,

"the Ohio Supreme Court has held that failure to investigate the truth of the communication is not of itself enough to refute the qualified privilege defense, as 'mere negligence is not enough to establish actual malice.' " *Id.*, quoting *Dale v. Ohio Civ. Serv. Emp. Assn.*, 57 Ohio St.3d 112, 118 (1991).

{¶ 58} As previously discussed, the statements at issue were motivated by a "church interest," i.e., involving an underlying church discipline matter, as well as an interest in protecting minors. Further, the statements at issue had a "factual foundation" based on appellant's own admissions as to his past activity. *See Mosley* at 638 (no malice where church deacons "did have a factual foundation for their opinion concerning the effect of [the pastor's] health on his performance").

{¶ 59} Accordingly, as there are no genuine issues of material fact that the statements at issue are entitled to a qualified privilege, we find no error with the trial court's determination that appellees are entitled to judgment as a matter of law on appellant's claims of defamation, slander, libel, and false-light invasion of privacy.

{¶ 60} Appellant further contends the trial court erred in failing to find genuine issues of material fact as to his claims for invasion of privacy. Appellant acknowledges the record on summary judgment indicates he disclosed his conduct to members of the church before the congregational meeting on August 24, 2017, but maintains he only told members of the church about his past after Pastor Lee told him he would be informing members of the congregation what he had learned. According to appellant, he "only reached out to members of the church after this exchange with [Pastor] Lee, as he wanted the opportunity to defend himself." (Appellant's Brief at 40.)

{¶ 61} In order to establish a claim for invasion of privacy through publicity, a plaintiff must prove the following elements: "(1) communication of the matter to the public at large or to so many persons that the matter is substantially certain to become one of public knowledge, (2) disclosure of facts concerning the individual's private life, (3) the matter publicized must be highly offensive and objectionable to a reasonable person of ordinary sensibilities, (4) the communication must be intentional, not negligent, and (5) the matter publicized is not of legitimate concern to the public." *Dautartas v. Abbott Labs.*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 65, citing *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166-67 (10th Dist.1985).

{¶ 62} Construing the allegations most strongly in favor of the non-moving party, we find no genuine issue of material fact as to appellant's claim for invasion of privacy. As previously discussed, the matter communicated arose out of an internal church investigation of an accusation involving appellant, who at the time was serving in the church's youth ministry. Significantly, the allegations of appellant's past sexual conduct were not unsubstantiated but rather by appellant's own admission, confirmed. The subsequent congregational meeting, restricted to members of the Vision Team and parents of youth, involved a discussion of that past conduct in the context of determining whether church youth were at risk. We conclude, as a matter of law, the comments were of legitimate concern to the members of the congregation. *See, e.g., Bertsch v. Communications Workers of Am., Local 4302*, 101 Ohio App.3d 186, 193 (9th Dist.1995) (comments regarding the plaintiff's job performance, although "not matters of general public concern," were "matters of legitimate concern to the members of the union" and were made to members in the context of a labor dispute and, as such, did not support an action of invasion of privacy); *Terry* at 1457 ("issue as to whether or not an adult who interacts with minors in a church youth program has engaged in an inappropriate relationship with any of the minors is clearly a matter of public interest" based on society's interest in protecting minors, "particularly in places such as church programs that are supposed to be safe").

{¶ 63} Appellant next contends genuine issues of material fact remain as to his claim for breach of confidentiality. In support, appellant cites to *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395 (1999), paragraph one of the syllabus, in which the Supreme Court of Ohio held that "an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." Appellant points to the deposition testimony of congregant Cooper who testified that "if he ever had a meeting with his pastor in which he confessed a past sin, he would expect confidentiality." (Appellant's Brief at 42.)

{¶ 64} While appellant appears to equate the conduct at issue to a clergy's obligations to maintain the confidentiality of a penitent's confession, the facts on summary judgment do not support such a characterization. Specifically, the undisputed facts do not

indicate that appellant sought out Pastor Lee for counseling or to confess a past sin;[2] rather, Pastor Lee, after learning of the past conduct of appellant from a current congregant, sought out appellant to inquire about the truth of those allegations. As noted by appellees, the summary judgment evidence does not suggest appellant was seeking spiritual consultation, nor did Pastor Lee provide testimony as to a confession or confidential communication made for religious counseling. *See, e.g., McFarland v. W. Congregation of Jehovah's Witnesses, Lorain, Ohio, Inc.*, 9th Dist. No. 15CA010740, 2016-Ohio-5462, ¶ 13, quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980) (noting the clergy-penitent privilege " 'recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive [spiritual] consolation and guidance in return' "). Accordingly, the trial court did not err in granting summary judgment in favor of appellees as to appellant's claim for breach of confidentiality.

{¶ 65} Appellant also contends genuine issues of material fact remain as to his claim for negligence. We disagree. Appellant relies again on his contention the facts implicate the cleric-penitent privilege (i.e., concerning the confidentiality of a confession), an issue we have addressed and rejected above. Upon review, we agree with appellees that appellant has failed to identify a duty to maintain confidentiality under the facts of this case that would support his claim for negligence. As also noted by appellees, the mandatory reporting obligations of R.C. 2151.421, in fact, impose a requirement on members of the clergy to report suspected child abuse (as illustrated in this case through the deposition testimony of Pastor Lee who stated that, upon contacting a health services agency (Netcare), he was informed of a mandatory reporting requirement based on the information he had received). *See, e.g., Carovac v. Lake Cty. Bd. of Dev. Disabilities/Deepwood*, N.D.Ohio No. 1:19 CV 2344 (Sept. 9 2020) (alleged defamatory statement "protected by the mandatory reporting statutes" and entitled to qualified privilege); *Johnson v. Aultman Hosp.*, 5th Dist. No. 2017 CA 00145, 2018-Ohio-1268, ¶ 45 (based on "mandatory reporting requirement," the appellees had "qualified privilege" to report the appellant's termination).

---

[2] As found by the trial court, the record evidence indicates that appellant "took exception to characterizing [his] conduct as molestation" or even as immoral. (Apr. 4, 2022 Decision at 5.) In response to an inquiry whether he knew touching minors in the groin area "was wrong," appellant responded: "Did not consider it wrong, no." (Tharp Depo. at 27.)

{¶ 66} Appellant next asserts he presented the trial court with operative facts which would allow an inference that appellees intentionally inflicted emotional distress upon him. Appellant maintains that statements during the congregational meeting regarding an incurable disease, based on unnamed professionals who had never interacted with him, were meant to humiliate and embarrass him.

{¶ 67} In order to recover for a claim for intentional infliction of emotional distress, a plaintiff is required "to show that (1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 82 (10th Dist.1991), citing *Pyle v. Pyle*, 11 Ohio App.3d 31, 34 (8th Dist.1983).

{¶ 68} Liability as to a claim for intentional infliction of emotional distress " ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." ' " *Moore v. Impact Community Action*, 10th Dist. No. 12AP-1030, 2013-Ohio-3215, ¶ 15, quoting *Mowery v. Columbus*, 10th Dist. No. 05AP-266, 2006-Ohio-1153, ¶ 49, quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 375 (1983). Instead, "liability is found only where the conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Id.*, quoting *Yeager*, quoting Restatement of the Law 2d, Torts, Section 46(1) (1965) .

{¶ 69} As indicated, appellant contends he suffered emotional distress as a result of Pastor Lee informing the congregation he had an incurable disease when the only support for this contention was the "supposed unnamed 'professionals' who had never seen or interacted with [appellant]." (Appellant's Brief at 47.)

{¶ 70} The record on summary judgment fails to create a genuine issue of material fact that the conduct at issue, arising out of an internal church investigation, rose to the level of extreme and outrageous behavior necessary to support a claim for intentional infliction of emotional distress, nor does the record present a genuine issue of material fact

as to whether appellees' intent, based on concerns pertaining to the protection of minors, was to cause appellant emotional distress. Further, we have previously determined, as did the trial court, that the communications at issue were protected by a qualified privilege. *See, e.g., Smith v. Ameriflora, 1992, Inc.*, 96 Ohio App.3d 179, 189 (10th Dist.1994) ("Ohio courts have recognized that the qualified privilege defense is applicable to actions for intentional infliction of emotional distress."); *Gintert v. WCI Steel, Inc.*, 11th Dist. No. 2002-T-0124, 2007-Ohio-6737 ("When a privilege, qualified or absolute, attaches to statements made in a defamation action, those statements remain privileged for the purpose of derivative claims such as intentional infliction of emotional distress and tortious interference with a business relationship.").

{¶ 71} Appellant also contends the trial court erred in granting summary judgment as to a claim of clergy malpractice. We disagree.

{¶ 72} Clergy malpractice has been defined as "the failure to exercise the degree of care and skill normally exercised by members of the clergy in carrying out their professional duties." *Stewart v. W. Ohio Conf. of the United Methodist Church*, 10th Dist. No. 02AP-974, 2003-Ohio-3885, ¶ 37, citing *Byrd v. Faber*, 57 Ohio St.3d 56, 57 (1991). The Supreme Court has held that "in order to generate a cause of action for clergy malpractice, the cleric's behavior must 'fall outside the scope of other recognized torts.' " *Id.*, quoting *Strock v. Pressnell*, 38 Ohio St.3d 207, 212 (1988). Accordingly, if a "cleric's behavior fits within an established category of liability, * * * it would be redundant to simultaneously hold the cleric liable for clergy malpractice." *Id.*

{¶ 73} In the present case, appellant brought claims for ordinary negligence, breach of confidentiality and breach of fiduciary duties, and his claim for clergy malpractice does not implicate behavior beyond the scope of those claims. *Stewart* at ¶ 38 (appellant has failed to allege activity "for which recovery in tort is not available," and therefore "[t]o allow recovery for clergy malpractice on the basis of this same conduct would be to grant a redundant remedy"). *See also Alexander v. Culp*, 124 Ohio App.3d 13, 19 (8th Dist.1997) ("A cause of action for clergy malpractice is not available when other torts provide a remedy.").

{¶ 74} Based on this court's de novo review of the record, the trial court did not err in granting summary judgment in favor of appellees on appellant's claims for defamation, libel, slander, invasion of privacy, false-light invasion of privacy, breach of confidentiality,

negligence, intentional infliction of emotional distress, and clergy malpractice. Accordingly, appellant's second assignment of error is not well-taken and is overruled.

{¶ 75} Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.

_____